SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### State of New Jersey v. Kingkamau Nantambu (A-97-13) (073589)

**Argued February 2, 2015 -- Decided April 29, 2015**

**SOLOMON, J., writing for a unanimous Court.**

In this interlocutory appeal, the Court addressed the admissibility of a recorded conversation where a portion of the conversation was inadvertently omitted from the recording.

Atlantic City police responded to reports of a domestic disturbance between defendant Kingkamau Nantambu and his girlfriend, Crystal Aikens. Aikens told police that defendant had threatened her with a gun. After police located a hidden handgun in defendant's apartment, defendant was charged with fourth-degree possession of a defaced firearm and second-degree possession of a weapon by a convicted person.

Subsequently, Aikens called the Atlantic County Prosecutor's Office alleging that defendant had engaged in witness tampering. She agreed to call defendant on her cell phone and allow Detectives Ted DeSantis and Rich Johannessen to record the conversation. Johannessen attached two earpieces to a digital audio recorder so that the device could record the conversation while the detectives listened in. Aikens also used the "speaker phone" function so the detectives could hear without headphones. During the conversation, defendant asked Aikens if she had been to the Prosecutor's Office. She replied that she had stalled them, and asked defendant for the money he had promised her. Defendant, agreeing that he had promised her money, advised Aikens as to what to say when she was questioned. During a discussion about the gun, defendant insisted that "[n]obody seen the gun that day." Aikens disagreed, claiming that she saw defendant put the gun in a case. Immediately after that statement, a beeping sound interrupted the conversation. According to Johannessen, Aikens had moved the phone, causing the recording device to fall and the wires to disconnect. Johannessen picked up the recorder, removed and replaced its batteries, and replaced the wires. By the time recording resumed, approximately two minutes had passed and Aikens and defendant were concluding their conversation. Based on the conversation, charges of third-degree bribery of a witness, third-degree witness tampering, and fourth-degree tampering with physical evidence were added to defendant's existing weapons charges.

The recording was offered as evidence demonstrating defendant's intent to tamper with the State's witness and showing that defendant possessed the gun for which he was charged with unlawful possession. Defendant moved to suppress the recording, asserting that the two-minute gap rendered it inadmissible. At the suppression hearing, DeSantis explained that the detectives heard the unrecorded portion of the conversation, during which he claimed nothing relevant was said. Although Johannessen stated that he only could hear Aikens' side of the discussion, he concurred that nothing was said relating to the recorded portion of the conversation.

The trial court, relying State v. Driver, 38 N.J. 255 (1962), granted defendant's motion, finding that the two-minute gap rendered the recording inadmissible as substantive evidence. The court determined that it was irrelevant whether the deletion was intentional. Rather, it only mattered that the recording was interrupted following a very damaging statement regarding defendant's alleged possession of the gun. On reconsideration, the judge noted that flawed recordings may be admitted, but fundamental fairness required exclusion of this recording because the interruption occurred at a particularly crucial point.

The Appellate Division granted the State's motion for leave to appeal, and reversed in an unpublished decision. Since the detectives asserted that nothing important was said during the two-minute gap, the panel rejected the trial court's conclusion that the conversation was interrupted at a critical point. It concluded that the omitted portion went to the weight and probative value of the evidence rather than its admissibility. The Court granted defendant's petition for certification. 217 N.J. 623 (2013).

**HELD:** When considering the admissibility of a recording containing a partial omission, the trial court must employ a two-part analysis. First, the trial court must determine if the omission is unduly prejudicial, conducting an objective analysis focused on the evidentiary purposes for which the recording is being offered. If the trial court, in its discretion, finds the omission unduly prejudicial, it must then consider whether it renders all or only some of the

recording untrustworthy, and suppress only that portion deemed untrustworthy.

1. Relevant evidence is admissible under N.J.R.E. 402 unless "its probative value is substantially outweighed by the risk of undue prejudice." N.J.R.E. 403. Determinations on the admissibility of evidence are generally made outside the presence of the jury in a Rule 104 hearing. A trial court's evidentiary rulings are reviewed for abuse of discretion, but no deference is accorded to the court's legal conclusions. (pp. 13-14)

2. In State v. Driver, 38 N.J. 255 (1962), this Court set forth the standard for the admissibility of a recording in a criminal trial, requiring analysis of whether: (1) the device could record the conversation or statement; (2) its operation was competent; (3) the recording was authentic and correct; (4) no changes, deletions or additions were made; and (5) any alleged confessions were elicited voluntarily. The second and fourth Driver factors are at issue here. No prior case law exists in which this Court has defined what was meant by operator competence or parsed the effect of an unintentional omission. Since determining whether the recording should have been excluded calls for an application of the law to the facts, the Court reviews the trial court's decision de novo. (pp. 14-16)

3. The second and fourth Driver factors are safeguards designed to ensure the trustworthiness of a recording. In State v. Cusmano, 274 N.J. Super. 496 (App. Div. 1994), the Appellate Division examined the operator-competence factor and concluded that trustworthiness is the polestar for the admissibility of a recording. Applying New Jersey jurisprudence since Driver and federal decisional law considering the admissibility of incomplete recordings, the panel held that determinations of operator competence must be viewed liberally. The Court agrees with this conclusion, finding that courts should focus on the reliability of the recording rather than the actions or qualifications of the operator. In light of technological advances since Driver, which have made recording devices more reliable and easy to use, the operator competency factor no longer requires separate consideration. (pp. 16-18)

4. Turning to the fourth Driver factor, pursuant to the established standards governing the admissibility of recordings, the Court finds no basis to conclude that the exclusion of a recording in its entirety is required merely because an omission rendered a portion of the recording unduly prejudicial. Rather, in such circumstances a trial court should conduct a Rule 104 hearing to determine whether the omission renders all or part of the recording unreliable and inadmissible. The recording should be admitted to the extent that it contains competent and relevant evidence, while the portion deemed unduly prejudicial should be redacted. (pp. 18-19)

5. Here, the Court finds no basis to disturb the trial court's finding that the omission of defendants' response to Aikens' accusatory statement was unduly prejudicial to defendant. Turning to the question of whether the defect requires exclusion, the Court reiterates that this decision is entrusted to the trial court's discretion, which must take into account the evidential purpose served by the recording, including considering whether the recording is probative of one or multiple theories of the case. Where, as here, the recording contains competent relevant evidence relating to two distinguishable evidentiary purposes, the question becomes whether the recording must be precluded in its entirety. Relying on N.J.R.E. 105 and the Appellate Division's persuasive reasoning in State v. Zicarelli, 122 N.J. Super. 225 (App. Div. 1973), the Court concludes that redaction is appropriate in such circumstances. Here, although the omission renders a portion of the conversation unduly prejudicial with respect to the weapons charge, nothing in the record suggests that the omission created a risk of undue prejudice with respect to the bribery and witness-tampering charges. Thus, according appropriate deference to the trial court's findings, the Court holds that the recording was admissible up to and including the point at which defendant stated "[n]obody seen the gun that day." (pp. 19-25)

6. Where a recording contains a partial omission, trial courts must determine whether the omission is unduly prejudicial and, if so, whether the omission renders all or only some of the recording inadmissible. Although the Driver analysis remains relevant to these determinations, a recording's shortcomings with respect to one factor do not automatically necessitate exclusion of the entire recording. Rather, the court should consider the Driver factors together, on a case-by-case basis, to determine whether and to what extent a recording contains competent relevant evidence. (pp. 26-27)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

KINGKAMAU NANTAMBU,

    Defendant-Appellant.

        Argued February 2, 2015 – Decided April 29, 2015

        On certification to the Superior Court,
        Appellate Division.

        Joseph C. Liguori argued the cause for
        appellant (Mazraani & Liguori, attorneys).

        Deborah C. Bartolomey, Deputy Attorney
        General, argued the cause for respondent
        (John J. Hoffman, Acting Attorney General of
        New Jersey, attorney).

    JUSTICE SOLOMON delivered the opinion of the Court.

    In this interlocutory appeal, we address the admissibility of a recorded conversation where a portion of the conversation was inadvertently omitted from the recording. The recording in question is a phone conversation between defendant Kingkamau Nantambu and his girlfriend, Crystal Aikens. It was made during a police investigation into allegations by Aikens that defendant had engaged in witness tampering related to a prior indictment for weapons offenses. The recording was interrupted when the

1

recording device fell to the ground, causing the wires to disconnect and the device to shut off. Critically, the recording stopped directly after Aikens stated that she had seen defendant with the gun that formed the basis of the weapons charges against him; defendant's response, if any, was not recorded.

The question presented is whether an inadvertent omission that renders a portion of a recording unreliable requires suppression of the entire recording. Having carefully reviewed the evidentiary concerns animating our decision in State v. Driver, 38 N.J. 255 (1962), and accounting for the technological advances that have taken place over the past half century since that decision, we take this opportunity to emphasize that reliability is the decisive factor in determining the admissibility of a recording. A review of Driver and its progeny indicates that the decision whether to admit a recording into evidence is a highly fact-sensitive analysis, requiring consideration not only of any gaps or defects in the recording but also the evidential purposes for which the recording is being offered. Nothing in our review of case law or evidentiary rules requires suppression of an entire recording when only part of that recording has been omitted or is found unreliable. Instead, the trial court should conduct an N.J.R.E. 104 hearing to evaluate which portions of a recording are reliable, and

2

which portions must be redacted.  The trial court should admit the recording to the extent it is deemed reliable, redacting only the portion of the recording deemed unreliable due to an omission or defect.  We therefore vacate the Appellate Division's order, which admitted the recording in its entirety, and remand for further proceedings.

## I.

The following facts are derived from the evidentiary hearings held in response to defendant's pretrial motions. Atlantic City Police Detective David Smith responded to reports of a domestic disturbance at defendant's residence.  Aikens greeted Detective Smith outside defendant's apartment and told him that defendant had threatened her with a gun.  Detective Smith arrested defendant and transported him to the police station.

En route to the police station, defendant consented to a search of his apartment.  Detective Smith returned to the apartment and, after a brief search, found a handgun hidden under a child's bed.  Defendant was subsequently charged with fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-

3

3(d), and second-degree possession of a weapon by a convicted person, N.J.S.A. 2C:39-7.[1]

After defendant filed an unsuccessful motion to suppress the gun, Aikens left a voice mail with the Atlantic County Prosecutor's Office indicating that defendant had engaged in witness tampering. The next day, Aikens met with Detectives Ted DeSantis and Rich Johannessen at the Prosecutor's Office. At the detectives' request, Aikens agreed to call defendant on her cell phone and to allow the detectives to record the conversation, a process commonly referred to as a "consensual intercept."[2] To facilitate better cell phone reception and to avoid background noise that might indicate to defendant that Aikens was at the Prosecutor's Office, the call was conducted in the parking lot behind the Prosecutor's Office.

Detective Johannessen attached two earpieces to a digital audio recorder, which allowed the recording device to record the conversation while the detectives simultaneously listened to the

---

[1] The indictment also charged defendant with possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-5(d). That charge was omitted from the superseding indictment, discussed infra.

[2] Consensual intercepts are governed by the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 to -34, which sets forth a variety of protocols. We have held that the statute "demands strict adherence to its protocols." State v. K.W., 214 N.J. 499, 503 (2013). No argument was raised regarding adherence to the statute's requirements.

4

conversation using headphones.  The detectives also directed Aikens to use the cell phone's "speaker phone" function, which allowed them to overhear the conversation without the headphones.

During the conversation, defendant asked Aikens if she had gone to the Prosecutor's Office.  Aikens replied that she had "stalled" the Prosecutor's Office by telling them she would "come next week."  She and defendant then had the following discussion:

> [Aikens]: [Y]ou said yesterday you were going to give me some money.
>
> [Defendant]: What happen?
>
> [Aikens]: You said yesterday you was going to give me some money, [b]out when I come from the Prosecutor's office.
>
> [Defendant]: I got you. . . . I told you yesterday.
>
> . . . .
>
> [Aikens]: Am I going to have to go to trial too?  Cause they didn't send me no subpoena or nothing.
>
> [Defendant]:  Now another thing my lawyer was saying, was . . . if you let the prosecution know in advance that your statement is going to be that it wasn't his gun I don't know who[se] gun it was.  Then there's nothing they can do as far as charging anybody.  You know what I am saying?
>
> [Aikens]: I did not tell them, I ain't tell them I put the gun nowhere.

5

After defendant assured Aikens that he would get her money, Aikens stated that she was concerned that she might "get in trouble," and that she was "really stressed out" about the situation. Defendant responded that he had spoken with his lawyer, and that she would not "get in trouble . . . as long as you don't say [the gun is] yours." The following exchange ensued.

> [Defendant]: They can't charge you with nothing.
>
> [Aikens]: As long as I don't say it's mine?
>
> [Defendant]: Yeah, you go in there and say oh yeah, it's my gun, then they going to charge you . . . .
>
> [Aikens]: Why the hell would I say it was mine?
>
> [Defendant]: It's just a h[y]pothetical. We ain't saying that you are going to say that shit. But what I am saying is that is the only way they would be able to charge you with anything. . . . He said they can't charge you with perjury because you never made an official statement.
>
> . . . .
>
> [Defendant]: You didn't see the gun that day.
>
> [Aikens]: Huh?
>
> . . . .
>
> [Aikens]: You said I didn't see it that day?
>
> [Defendant]: Nobody seen the gun that day.

> [Aikens]: Yes I did. I saw you putting it in
> the case when we was arguing in the room. I
> did. And Keisha heard us in there arguing.

Immediately after Aikens stated that she saw defendant with the gun, a beeping sound interrupted the conversation. Detective Johannessen asked whether the recorder's battery had died. Aikens indicated that she received an incoming call from a friend, told her friend that she would call her back, and resumed the conversation with defendant. However, according to Detective Johannessen at that moment Aikens moved the phone and "pulled the wires down," causing the recording device to fall and the wires to disconnect from the cell phone. Detective Johannessen picked up the recorder, noticed that it appeared "dead," removed and replaced the battery, and replaced the wires for the earpieces. By the time recording resumed, approximately two minutes had passed and Aikens and defendant were concluding their conversation.

Aikens also provided the detectives with text messages sent by defendant to Aikens over a four-day period. In those text messages, defendant asked, "Do you prefer the Wii or the cash?"; and stated, "My lawyer said he's going to call you in a bit, . . . I really need you to help me out here."

Based on defendant's communications with Aikens, an Atlantic County Grand Jury returned a superseding indictment

7

charging defendant with third-degree bribery of a witness, N.J.S.A. 2C:28-5(d); third-degree witness tampering, N.J.S.A. 2C:28-5(a); and fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1); in addition to the weapons offenses.

Defendant moved to suppress the recording, asserting among other arguments that the two-minute gap rendered the recording inadmissible. At the suppression hearing, the prosecutor argued that the recording, considered together with defendant's text messages to Aikens, was relevant to show that defendant offered Aikens either a video-game system or cash to change her testimony. The assistant prosecutor also argued that defendant admitted in the recorded conversation to possessing the gun that formed the basis of the weapons charge against him.

The prosecutor then presented the testimony of Detectives DeSantis and Johannessen. Detective DeSantis stated that he had never conducted a consensual recording before, and that Detective Johannessen handled the technical aspects of the operation. Johannessen confirmed that he managed the recording, including connecting the recorder to the phone and reconnecting the device after it fell. Johannessen stated that he used the recording device "somewhat frequently," and that before using it he "always check[s] it to make sure the battery[ is] fresh. Usually I'll play it safe and put a fresh battery in each time." Johannessen also stated that it took "approximately 15 or 20

8

seconds" to reconnect the device after it fell, and speculated that the recording did not resume for another minute and forty seconds because "the [digital audio] file wasn't closed properly."

Detective DeSantis testified that, because the phone was "on speaker the entire time," he could hear both sides of the conversation during the period the phone was disconnected from the recorder, and that "[a]s far as anything pertaining to our case, nothing was mentioned." Detective Johannessen similarly testified that, "to [his] recollection," nothing was said in the unrecorded portion of the conversation that related to the recorded portion of the conversation. However, at variance with DeSantis's testimony, Johannessen stated that he was only able to hear Aikens' side of the conversation after the recorder fell "because the cords were disconnected from the recorder."

The motion judge considered the factors for admissibility of a recording set forth in Driver, and determined that the two-minute gap rendered the recording inadmissible as substantive evidence and granted defendant's motion. The judge determined that it was irrelevant whether the deletion was intentional; it mattered only that the recording was interrupted just after Aikens made a "very damaging" statement regarding defendant's possession of the gun, depriving the listener of an opportunity to hear defendant's response. The judge added that although he

9

was not making a finding that the detectives were incompetent, "[a] competent operator wouldn't" have allowed the recorder to fall.

At the hearing on the prosecutor's motion for reconsideration, the judge acknowledged that recordings may be admitted even when there are gaps in the recording. He nevertheless determined that the recording was inadmissible because the recording stopped "at a particularly crucial point of that conversation," when Aikens stated that she saw defendant with the gun.[3] The judge affirmed his previous order, concluding that the recording did not include "substantially all" of the pertinent conversation and therefore is inadmissible as a matter of "fundamental fairness."

The Appellate Division granted the State's motion for leave to appeal, and reversed in an unpublished decision. The panel, noting that the trial judge did not find the omission in the recording was the result of intentional misconduct,

---

[3] The judge was also concerned that admitting Aikens' accusation "with absolutely no response from [defendant]" would require defendant to "give up his Fifth Amendment rights" because his only opportunity to respond would be "to get on the stand and say this is what I would have said." Defendant does not raise this argument and, given our resolution of this matter, we need not address its applicability here. See In re Civil Commitment of D.Y., 218 N.J. 359, 379 (2014) ("As a general principle, 'we strive to avoid reaching constitutional questions unless required to do so.'" (quoting Comm. to Recall Menendez v. Wells, 204 N.J. 79, 95 (2010))).

10

characterized the question presented as "whether an inadvertent failure to record one portion of a conversation justifies the exclusion of the entire tape."  The panel, relying on State v. Dye, 60 N.J. 518, 531, cert. denied, 409 U.S. 1090, 93 S. Ct. 699, 34 L. Ed. 2d 675 (1972), and State v. Cusmano, 274 N.J. Super. 496 (App. Div. 1994), determined that the recording should be admitted.  The panel explained:

> [T]he only types of deletions, omissions, gaps, and unintelligible or inaudible parts in the recording of a conversation that will warrant the recording's exclusion from evidence are those that raise the questions concerning whether the recording is a trustworthy record of statements actually uttered during a conversation by the parties to it.

Citing the detectives' testimony that nothing important was said during the unrecorded portion of the conversation, the panel rejected the motion judge's finding that the conversation was cut off at a critical point.  The panel concluded that the omitted portion goes to the weight and probative value of the evidence rather than its admissibility.

We granted defendant's petition for certification.  State v. Nantambu, 217 N.J. 623 (2013).

II.

Defendant maintains that the recording should be suppressed because two factors of the test set forth in Driver, supra, 38 N.J. at 287, were not met, namely: (1) the operators were not

competent, and (2) the recording contained omissions.  He argues that the detectives operating the recorder were not competent because they chose to conduct the recording "outside in a non-secure area."  That decision, defendant contends, led to an interruption in the recording at "the most important aspect of the conversation."

Defendant asserts that the recording was interrupted at a critical point in the conversation because the recording stopped just after Aikens stated that she saw defendant with the gun on the day of his arrest.  Defendant argues that Aikens' statement was clearly designed to elicit an admission from him that the gun was his, and that the omission of his response renders the recording unduly prejudicial because it asks the jury to speculate as to what, if any, reply he gave.  Defendant further notes that the omission relates to the most serious offense with which he has been charged.

The State responds that the existence of an audible recording alone establishes the competency of both the operators and the recording device.  The State argues that the unintentional omission of a "small segment" of an eighteen-minute conversation does not render the entire recording inadmissible under Driver.  The State echoes the appellate panel's conclusion that, unless the recording was rendered untrustworthy by the omission, the recording should be deemed

12

admissible.  The State adds that suppression of the entire recording was an abuse of discretion because it deprived the jury of the most reliable proof available.

Put succinctly, the issue before this Court is whether an omission rendering only a portion of a recording untrustworthy requires exclusion of the entire recording.  Whether the recording in this case is admissible requires this Court to refine the meaning and application of two factors from the Driver test: operator competency and omission from the recorded conversation.

### III.

We begin by acknowledging fundamental evidentiary principles.  "Once evidence is deemed relevant, it is admissible, N.J.R.E. 402, unless 'its probative value is substantially outweighed by the risk of [] undue prejudice,' N.J.R.E. 403, or some other bar to its admission is properly interposed."  Brenman v. Demello, 191 N.J. 18, 34-35 (2007) (alteration in original).  This determination is generally made outside the presence of the jury in a N.J.R.E. 104 hearing.  See, e.g., State v. Wakefield, 190 N.J. 397, 482 (2007), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008); State v. Collier, 316 N.J. Super. 181, 196 (App. Div. 1998), certif. denied, 158 N.J. 71 (1999).  The trial judge has broad discretion to exclude evidence as unduly prejudicial

13

pursuant to N.J.R.E. 403.  See State v. Nelson, 173 N.J. 417, 470 (2002); State v. Swint, 328 N.J. Super. 236, 253 (App. Div.), certif. denied, 165 N.J. 492 (2000).

"'[A] trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'"  State v. Harris, 209 N.J. 431, 439 (2012) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2000)).  However, we accord no deference to the trial court's legal conclusions.  See, e.g., State v. Mann, 203 N.J. 328, 337 (2010).  Thus, we uphold the facts found by the motion judge to the extent they are supported by sufficient credible evidence in the record, but "apply the law as [we] understand[] it" to those facts.  Ibid.; State v. Harris, 181 N.J. 391, 415 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005).

IV.

A.

With these standards in mind, we briefly review the state of the law on admissibility of incomplete recordings.  This Court in Driver, supra, set forth the standard for the admissibility of a recording in a criminal trial:

> [T]he speakers should be identified and it should be shown that (1) the device was capable of taking the conversation or statement, (2) its operator was competent, (3) the recording is authentic and correct,

14

(4) no changes, additions or deletions have been made, and (5) in instances of alleged confessions, that the statements were elicited voluntarily and without any inducement.

[38 N.J. at 287.]

In Driver, we considered the admission of a taped recording of the defendant's statement to the police that was so "garbled" and "full of static and other foreign sounds" that "it was unintelligible and inaudible for the most part." Id. at 288. Indeed, the trial judge acknowledged the recording was inaudible, but admitted it nonetheless. Ibid. We noted that, in most situations, an audio recording "may be an invaluable aid," and "may be more satisfactory and persuasive evidence than [a] written and signed document." Id. at 287. Thus, even a flawed audio recording is "not inadmissible per se, so long as its capacity to record accurately, and the other conditions precedent [are] established." Id. at 288. Nevertheless, the audio recording in that case was so unintelligible that "[b]asic fairness demanded its exclusion." Ibid.

Driver did not, however, elaborate on the two factors at issue in this appeal -- factor two, relating to the operator's competence, and factor four, whether the recording contained changes or deletions. Specifically, this Court has neither defined what was meant by operator competence nor parsed the effect of an unintentional omission or deletion.

15

B.

Both the motion judge and the Appellate Division understood the standards governing the admission of an audio recording to require an absolute conclusion: either the recording contains an omission that is unduly prejudicial to defendant and therefore the recording must be excluded in its entirety, or the omission in the recording is not unduly prejudicial and must be admitted in its entirety. As stated above, the motion judge determined that the omission, though inadvertent, was unduly prejudicial and ruled the recording inadmissible. The appellate panel, for its part, disagreed that the omission was prejudicial and held that the recording should have been admitted. As an application of law to the facts, we review this determination de novo. See State v. Brown, 216 N.J. 508, 545 (2014) ("When a case involves mixed questions of law and fact, the Court provides deference to the supported factual findings of the trial court, but reviews de novo the application of legal principles to such factual findings.").

V.

The second and fourth Driver factors disputed here are interrelated in that both are safeguards designed to ensure the trustworthiness of the recording. The Appellate Division examined the operator-competence factor in Cusmano, supra, and concluded that trustworthiness is the polestar for the

16

admissibility of a recording. 274 N.J. Super. at 514-17. In that case, the motion judge determined that a ninety-minute recording of a taped conversation between the defendants and the witnesses to the crime, in which defendants attempted to persuade the witnesses not to testify, was inadmissible because the operator of the recording device was not competent and the recording contained omissions. Id. at 498-99. The panel, looking to New Jersey jurisprudence since Driver and federal decisional law considering the admissibility of incomplete recordings, held that "[a] determination of operator competence must be viewed liberally." Id. at 499-502, 509-12.

The panel cited the Court of Appeals for the Eighth Circuit, stating that "'[t]he fact that [the operator] successfully made the tape recordings [] satisfies the competency requirement.'" Id. at 511 (second alteration in original) (quoting United States v. Franklin, 747 F.2d 497, 498 (8th Cir. 1984)); see also United States v. Hughes, 658 F.2d 317 (5th Cir. 1981) (holding because "the paramount purpose of the inquiry is to insure the accuracy of the recording[,] . . . the government's failure to show the competency of either the operator or the machine was overshadowed by the evidence which demonstrated the reliability of the tapes." (citation omitted)), cert. denied, 455 U.S. 922, 102 S. Ct. 1280, 71 L. Ed. 2d 463 (1982). Thus, the panel determined that the question was not

17

whether, as the motion judge found, the operators "approached their responsibilities seriously" or "performed their task haphazardly," but whether they "produce[d] substantially audible tape recordings of the telephone conversations with insignificant omissions." Cusmano, supra, 274 N.J. Super. at 513.

We agree with Cusmano and the federal cases interpreting the operator-competency factor liberally, focusing on the reliability of the recording rather than the actions or qualifications of the operator.[4] In light of technological advances in the forty years since Driver, which have made recording devices more compact, reliable, and easy to use, the second Driver factor -- the operator's competence -- no longer requires separate consideration.

Also, as in Cusmano, this case is distinguishable from Driver in that the momentary disruption in the recording did not create a "continuous audibility problem [that] rendered the

_____

[4] In any event, unlike in Cusmano, the motion court here stopped short of finding the interruption in the recording was the result of operator incompetence. And properly so, as the record indicates the recording was interrupted not because of a technical mistake on the part of the operators but because Aikens unexpectedly pulled the connecting wires taut, causing the recorder to fall. Thus, even if the operators' choices and qualifications were valid considerations, we would reject defendant's suggestion that the detectives incompetently operated the recorder because they made the strategic choice to conduct the consensual intercept outside.

18

entire tape incomprehensible." Id. at 512-13. Applying the established standards governing the admissibility of recordings, we find no basis to conclude that exclusion of a recording in its entirety is required merely because an omission rendered a portion of the recording unduly prejudicial. Rather, we hold that a trial court should conduct a hearing pursuant to N.J.R.E. 104 to determine, in his or her discretion, whether an omission or similar flaw in the recording renders all or part of that recording unreliable and therefore inadmissible as unduly prejudicial under N.J.R.E. 403. The trial court should admit the recording to the extent that it contains competent and relevant evidence and redact the portion of the recording deemed unduly prejudicial. The recording here, though incomplete, was entirely audible. We turn then to the question of whether and to what extent the omission requires exclusion. This inquiry proceeds in two parts.

First, trial courts must determine in a N.J.R.E. 104 hearing whether an omission renders a recording unduly prejudicial. As Driver and its progeny make clear, the existence of an omission or defect in a recording does not automatically warrant suppression. Rather, "if a tape is partially intelligible and has probative value, it is admissible even though substantial portions thereof are inaudible." State v. Zicarelli, 122 N.J. Super. 225, 239 (App. Div.), certif.

19

denied, 63 N.J. 252, cert. denied, 414 U.S. 875, 94 S. Ct. 71, 38 L. Ed. 2d 120 (1973).

Whether an omission renders a recording unduly prejudicial depends upon the extent to which the omission adversely affects the evidentiary purpose or purposes for which the recording has been offered. Where, for example, the trial judge determines in his or her discretion that the omission reduces the probative value of the balance of the recording to such an extent that it is substantially outweighed by the risk of undue prejudice, then the recording should be excluded under N.J.R.E. 403. See Dye, supra, 60 N.J. at 531; Driver, supra, 38 N.J. at 288; Cusmano, supra, 274 N.J. Super. at 514-15. The motion judge here determined that the omission of defendant's response to Aikens' accusatory statement was unduly prejudicial to defendant. We find no basis to disturb that finding.

The Appellate Division rejected the motion judge's finding that the gap in the recording was unduly prejudicial for three reasons. First, the panel characterized as speculative the motion judge's finding that the recording was cut off at a "crucial point." We disagree. The recording cut out before defendant could respond to Aikens' statement that she saw defendant "putting [the gun] in the case when we was arguing." Defendant's response to that accusatory statement was critical to assessing that statement's probative value.

20

Second, the panel found that Detective DeSantis' testimony that nothing of consequence was said during the unrecorded portion of the conversation "flatly contradicted" the motion judge's finding. However, Detective DeSantis testified that he was unable to recall what specifically was said after the recorder was disconnected and gave no indication what, if any, response defendant gave to Aikens' accusatory statement. Further, Detective Johannessen testified that after the recorder became disconnected he was able to hear only Aikens' side of the conversation. Thus, despite his testimony to the contrary, he could not corroborate DeSantis' assertion that nothing of consequence was said during the fifteen to twenty seconds it took to reconnect the recording device.

Finally, the panel stated that defendant admitted in the recording to possessing the gun, which ameliorated any prejudice resulting from the gap in the recording. However, at no point in the recorded conversation did defendant admit to possessing a gun; nor did he directly ask Aikens to claim that the gun was hers. We therefore find the motion judge did not abuse his discretion in concluding that the omission of defendant's response to Aikens' accusatory statement casts serious doubts about the admissibility of the recording.

We therefore proceed to the second part of the inquiry: whether the omission, if unduly prejudicial, requires

21

suppression of all or part of the recording.  We reaffirm that the question of whether a defect in a recording warrants exclusion is a matter entrusted to the trial judge's discretion. Driver, supra, 38 N.J. at 288; see also Daniel E. Feld, Annotation, Omission or Inaudibility of Portions of Sound Recording as Affecting its Admissibility in Evidence, 57 A.L.R.3d 746 (1974) ("Many courts, with or without expressly stating the general rule, have stated that the admission of a recording that is partially inaudible or that reproduces only part of a statement or conversation is largely a matter within the trial court's discretion.").  However, that discretion must take into account "the evidential purpose which the tape served."  Zicarelli, supra, 122 N.J. Super. at 239.

When assessing the evidential purpose of the recording, the trial court must consider whether it is probative of one or multiple theories of the case.  Only then can the court properly determine whether the omission "was so substantial as to render the recording as a whole untrustworthy."  Dye, supra, 60 N.J. at 531 (citations and internal quotation marks omitted); see Cusmano, supra, 274 N.J. Super. at 514-15.  Where, as here, the recording contains competent relevant evidence relating to two distinguishable evidentiary purposes, the question becomes whether the recording must be precluded in its entirety.

22

Although we have not squarely addressed this question before, our rules of evidence provide some guidance.

Where evidence is admissible for one purpose but not for another, the trial court "upon request[] shall restrict the evidence to its proper scope and shall instruct the jury accordingly." N.J.R.E. 105. Thus, to the extent it remains competent and relevant, the trial court may admit an otherwise admissible recording while redacting a portion deemed inadmissible due to an omission or defect. See Wakefield, supra, 190 N.J. at 482-83 (approving trial court's admission of victim impact statement with redaction of "inflammatory comments"); State v. Figueroa, 358 N.J. Super. 317, 325-26 (App. Div. 2003) (approving trial court's admission of confession with redaction of references to other crimes).

The Appellate Division's reasoning in Zicarelli, which we find persuasive, further suggests redaction is appropriate in this case. There, the Appellate Division addressed Zicarelli's contention that the trial court erred in admitting taped conversations between Zicarelli and Policastro, the State's witness, because the taped recording was "largely inaudible and unintelligible." Zicarelli, supra, 122 N.J. Super. at 238-39. Zicarelli and Policastro had known each other for fifteen years, during which time Policastor "acted as a courier for Zicarelli

in carrying 'pay-offs' to certain public officials." Id. at 238.

The Appellate Division held that, although "a substantial part" of the recording was inaudible,

> the tape of the conversation between Policastro and Zicarelli . . . proved the intimacy between them and, considered with Policastro's direct testimony, the relationship of that intimacy to the central conspiracy of suppressing prosecution of the gambling enterprise headed by Zicarelli. Therefore, it had probative value to that extent, and was admissible for that purpose.
>
> [Id. at 239.]

The Appellate Division then distinguished Driver, noting that

> the inaudibility of the tape [in Driver] was central to the purpose for which it was offered and, because it was largely inaudible . . . it would have been grossly unfair to admit it. As said above, the Policastro-Zicarelli tape had probative value for reasons other than what was said. Inaudibility had no relevance to those reasons.
>
> [Id. at 239-40.]

Similarly, the recorded conversation between defendant and Aikens was probative in more than one respect: (1) defendant's responses to Aikens' claim that he owed her money creates an inference that defendant was offering Aikens money to alter her testimony; (2) defendant's statements about what Aikens' testimony might be suggests he was coaching her to deceive the prosecution; and (3) Aikens' statement that she saw defendant

24

with a gun supports the State's assertion that defendant possessed the gun for which he has been charged. The failure to record defendant's response, if any, to Aikens' statement that she saw defendant with a gun renders that portion of the conversation unduly prejudicial with respect to the weapons charge. However, there is nothing in the record to suggest that the omission created a risk of undue prejudice with respect to the bribery and witness-tampering charges. Nor does it appear that the omission has any impact on defendant's response that "[n]obody seen the gun that day."

According appropriate deference to the motion judge's findings, we hold that the recording was admissible up to and including the point at which defendant stated: "Nobody seen the gun that day." Admitting the recording beyond that point unfairly asks the jurors to speculate about the content of defendant's reply, see State v. Frost, 158 N.J. 76, 86 (1998) (finding prosecutor's comments that "unfairly invite[] the jury to speculate" improper); see also McKnight v. State, 1 N.E.3d 193, 202-03 (Ind. Ct. App. 2013) (finding tape recording "must be of such clarity and completeness to preempt speculation in the minds of jurors as to its content" (quoting Dearman v. State, 743 N.E.2d 757, 762 (Ind. 2001)); whereas excluding the recording before that point needlessly deprives the State of competent, relevant, and admissible evidence.

25

## VI.

In conclusion, we hold that a trial court must employ a two-part analysis when considering the admissibility of a recording containing partial omissions.  The court must first determine if the omission is unduly prejudicial; that is, does the omission adversely impact the trustworthiness of the recording.  That is an objective analysis that should focus on the evidentiary purposes for which the recording is being offered.  If the trial court in its discretion finds the omission unduly prejudicial, it must then consider whether the omission renders all or only some of the recording untrustworthy, and suppress only the portion of the recording that is rendered untrustworthy.

While the Driver analysis remains relevant to the above determinations, a recording's shortcomings with respect to one factor do not automatically necessitate exclusion of the entire recording.  Rather, the court should consider the factors set forth in Driver together, on a case-by-case basis, to determine whether and to what extent the recording contains competent relevant evidence.

The recording here was offered for two evidentiary purposes: to demonstrate defendant's intent to tamper with the State's witness and to show that defendant possessed the gun for which he was charged with unlawful possession.  The

26

unintentional omission rendered untrustworthy and unduly prejudicial only the portion of the recording in which Aikens accused defendant of possessing the gun; it did not adversely affect the balance of the recording.

## VII.

Accordingly, the judgment of the Appellate Division admitting the recording in its entirety is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-97                           SEPTEMBER TERM 2013

ON CERTIFICATION TO        Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

KINGKAMAU NANTAMBU,

        Defendant-Appellant.



DECIDED          April 29, 2015
                 Chief Justice Rabner                    PRESIDING
OPINION BY              Justice Solomon
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |