**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4451-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ADRIAN A. VINCENTY, a/k/a
ADRIAN A. VICENTE and
ADRIAN A. VICENTY,

    Defendant-Appellant.

_____

Submitted September 28, 2016 — Decided August 17, 2017

Before Judges Fuentes and Gooden Brown.

On appeal from the Superior Court of New
Jersey, Law Division, Hudson County,
Indictment No. 12-07-1294.

Joseph E. Krakora, Public Defender, attorney
for appellant (Stephen W. Kirsch, Assistant
Deputy Public Defender, of counsel and on the
brief).

Esther Suarez, Hudson County Prosecutor,
attorney for respondent (Erica M. Bertuzzi,
Assistant Prosecutor, on the brief).

PER CURIAM

A Hudson County grand jury returned Indictment No. 12-07-1294 charging defendant Adrian A. Vincenty with first degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3a; first degree robbery, N.J.S.A. 2C:15-1; second degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; second degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4a; and second degree unlawful possession of a firearm, N.J.S.A. 2C:39-5b.

After the trial court denied his motion to suppress an inculpatory statement obtained by police officers from the Township of Weehawken, defendant entered into a negotiated agreement with the State in which he pleaded guilty to first degree attempted murder in exchange for the State recommending that the court sentence him to a term of imprisonment not to exceed ten years, with an eighty-five percent period of parole ineligibility and five years of parole supervision as mandated by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Under the agreement, defendant reserved his right to appeal the trial judge's decision denying his motion to suppress. On March 20, 2015, a different trial judge sentenced defendant to a ten-year term of imprisonment, subject to the parole restrictions required by NERA.

Defendant now appeals arguing the motion judge erred when she found defendant knowingly and intelligently waived his rights

against self-incrimination because the two police interrogators did not inform him of the charges filed against him before interrogating him.  After reviewing the record developed before the trial court, we affirm.

Pursuant to N.J.R.E. 104(c), the trial court conducted evidentiary hearings on September 19 and December 19, 2013, to determine the admissibility of defendant's inculpatory statement. The State presented the testimony of Weehawken Detective Jody Brian Mera, who was one of the officers who interrogated defendant on March 12, 2012.  On that day, Weehawken Detective Thomas Glackin asked Mera to assist him with an investigation involving the shooting of a man that occurred nearly a year earlier on March 20, 2011.  Mera explained that Glackin asked for his help because Glackin "found out through the jail that the actor, Mr. Vincenty, only spoke Spanish."  Mera testified he "was fluent in Spanish."

That same day, Glackin and Mera interrogated defendant at the Garden State Correctional Facility, where defendant was serving a five-year sentence for an unrelated crime.  The transcript of the interrogation shows the detectives read defendant his Miranda[1] rights before mentioning anything about the March 20, 2011

---

[1]  Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

incident.  Defendant acknowledged he understood and signed the waiver of rights form.[2]  The Detectives told defendant they were there to ask him questions about a shooting that occurred at 32nd Street and Patterson Plank Road, in which the victim was shot in the back of the head as part of an attempted robbery.

Mera testified he explained to defendant that "the reason we were there[.]"  The transcript of the interrogation reflects that defendant was provided with the following information after he signed the Miranda waiver form:

> There is a guy, the victim, he is walking that night, with a gun, they try to rob him, we don't know what exactly happen[ed] but a shot was fired and hit him in the back of his head, okay?  The . . . man . . . did live so there are no homicide charges, okay, but there was a lot[] of video that night.  It looks like no one saw it, okay?  In the video we saw you [meaning defendant] and the other guy.  The problem right now [is] that we can't identify the other guy, so at this moment on all this paper work and video, <u>everything, went to the judge, and the judge already charged you</u>.  We want the other guy, okay?  If . . . you want to talk to us, talk to us and on top of that we also have you on video with a mask, you

---

[2]  Although the transcript of the interrogation is in English, Glackin interrogated defendant in English and Mera interpreted for defendant in Spanish.  The transcript was based on the video recording of the interrogation.  Defendant challenged the accuracy of Mera's interpretation and the audibility of the recording in what the motion judge characterized as a "pseudo Driver hearing."  This refers to our Supreme Court's seminal decision, State v. Driver, 38 N.J. 255, 287 (1962), as subsequently modified in State v. Nantambu, 221 N.J. 390, 411 (2015).  Defendant is not appealing the motion judge's decision in this respect.

4                                                          A-4451-14T3

dropped the mask or you threw it away, no matter[,] . . . that mask was taken for DNA, okay, and you came up positive. Now, you must understand how DNA works, one person, okay, every person is different, nobody, no, no, (Unintelligible) it is not like they tested him and confused him with it. Yours is yours, mine is mine and his is his. No one else has it. Do you understand? <u>Okay, it was definitely you, that's why we already have the charges, okay?</u> Now, if you want to talk to us and you want to tell us, look, it was the other guy, the other guy told me to . . . take the gun. You want to talk to us, . . . while we look for the other guy, okay? We'll do what we have to do to, to see, okay? You cooperate with us[.]

[(Emphasis added).]

Six transcript pages later, the detectives told defendant the following specific information about the charges:

Q1: We have the charges. We have . . .

DEFENDANT: Yes but . . .

Q1: We have the charges. We have to give them today. What? Adrian Vicente, right? Vince, how, how do you pronounce it?

DEFENDANT: Vicentin.

Q1: Vicentin? Okay, look our judge[,] here is his mark[.] . . . Okay? <u>The charges, attempted homicide, robbery.</u> Okay?

Q2: <u>Conspiracy to commit robbery.</u>

. . . .

DEFENDANT: I understand, you know? I, I didn't rob anyone. I don't know (Unintelligible)[.]

5

Q1: Okay. Well, look. You want to see all the charges, here are all the charges[.]

DEFENDANT: You know, honestly, I believe (Unintelligeble)[.]

Q2. Remember Papo, remember? "Papi, give me all. Do not move, give me all." Remember?

Q1: Before . . . we go, look, here are your copies. The statement copy, give it to a lawyer, whatever you want. The charges are already here.

[(Emphasis added).]

After reviewing this evidence and hearing oral argument from counsel, the judge denied defendant's motion to suppress. The judge orally delivered her reasons from the bench on May 29, 2014. The motion judge began her analysis by specifically acknowledging State v. A.G.D., 178 N.J. 56 (2003), in which the Court held:

Although clearly not limited by age or immaturity, defendant was disadvantaged by a lack of critically important information. The government's failure to inform a suspect that a criminal complaint or arrest warrant has been filed or issued deprives that person of information indispensable to a knowing and intelligent waiver of rights.

[Id. at 68 (emphasis added).]

Mindful of this legal standard, the motion judge found defendant's reliance on A.G.D. was "misplaced" because:

It is clear from the testimony and the statement itself in the instant case that the detectives informed the defendant about the

A-4451-14T3

nature of the charges before they began questioning him about his involvement therein. Indeed as soon as he waived his right to an attorney[,] the detectives began discussing the incident, that is, a shooting that had occurred during the course of a robbery . . . in Weehawken.

Against this record, defendant now raises the following argument.

POINT I

DEFENDANT'S MOTION TO SUPPRESS HIS CONFESSION SHOULD HAVE BEEN GRANTED; CONTRARY TO STATE V. A.G.D., POLICE HAD HIM WAIVE HIS RIGHTS PRIOR TO INFORMING HIM OF THE CHARGES THAT WERE FILED AGAINST HIM.

We review a trial court's factual findings in support of granting or denying a motion to suppress to determine whether "those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014). Where the motion judge determined a witness's credibility after hearing live testimony, as she did here, we are bound to defer to the judge's factual findings because she had the "'opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). And as our Supreme Court recently held, we defer to a trial court's factual findings even when those findings are "based solely on video or documentary evidence[.]" State v. S.S., ___ N.J. ___,___

(2017) (slip op. at 25). As Justice Albin explained on behalf of a unanimous Court:

> Our system of justice assigns to the trial court the role of factfinder in matters not relegated to the jury. Trial judges in our Criminal Part routinely hear and decide suppression motions in which defendants seek to exclude evidence based on alleged violations of the Fourth and Fifth Amendments of the United States Constitution and corollary provisions of our State Constitution and common law. Our trial judges have ongoing experience and expertise in fulfilling the role of factfinder.

> [Ibid.]

Guided by these principles, we discern no legal basis to disturb the motion judge's factual findings. The judge had the benefit of hearing and observing Detective Mera's testimony. She found his account of how defendant's interrogation was conducted credible. The motion judge also viewed the video recording of defendant's interrogation and read the transcript which contained the English translation of the questions and answers. The judge found these documentary exhibits, which were admitted into evidence at the N.J.R.E. 104(c) hearing, corroborated Mera's testimony. We are bound to accept the motion judge's assessment of the credibility of this evidence. State v. S.S., supra, slip op. at 25-26.

8

The Court in S.S. also addressed and reaffirmed this State's historical commitment to an individual's right against self-incrimination. "The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." Id. at 28 (quoting State v. Nyhammer, 197 N.J. 383, 399, cert. denied, 558 U.S. 831, 130 S. Ct. 65, 175 L. Ed. 2d 48 (2009)). Most importantly, the Court reaffirmed the standard that a reviewing court uses to determine if a defendant asserted his right against self-incrimination.

> Any words or conduct that reasonably appear to be inconsistent with defendant's willingness to discuss his case with the police are tantamount to an invocation of the privilege against self-incrimination. In those circumstances in which the suspect's statement is susceptible to two different meanings, the interrogating officer must cease questioning and "inquire of the suspect as to the correct interpretation." Unless the suspect makes clear that he is not invoking his right to remain silent, questioning may not resume. In other words, if the police are uncertain whether a suspect has invoked his right to remain silent, two alternatives are presented: (1) terminate the interrogation or (2) ask only those questions necessary to clarify whether the defendant intended to invoke his right to silence.
>
> To invoke the right to remain silent, a suspect does not have to follow a prescribed script or utter talismanic words. Suspects

are mostly lay people unschooled in the law. They will often speak in plain language using simple words, not in the parlance of a constitutional scholar. So long as an interrogating officer can reasonably understand the meaning of a suspect's words, the suspect's request must be honored.

[Id. at 29-30 (citations omitted).]

Here, the record supports the motion judge's finding that defendant was fully informed of his right to remain silent, waived that right, and was apprised of the charges pending against him before he decided to cooperate with the investigation and provide self-incriminating information. The record supports the motion judge's finding that the interrogating officers did not violate the Court's holding in A.G.D.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4451-14T3