# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1071-22

A.C.P.,[1]

    Plaintiff-Respondent,

v.

J.G.T.,

    Defendant-Appellant.

_____

Submitted December 19, 2023 – Decided January 3, 2024

Before Judges Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-0404-23.

Ansell Grimm & Aaron, PC, attorneys for appellant (Mitchell Jonathon Ansell and Alfred Michael Caso, of counsel and on the brief; Leigh Thompson Oliver, on the brief).

Respondent has not filed a brief.

---

[1] We use initials to protect the confidentiality of the victim and others in these proceedings. R. 1:38-3(d)(10).

PER CURIAM

Defendant J.G.T. appeals from the October 25, 2022 final restraining order (FRO) entered against him under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues the Family Part judge erred in finding he committed the predicate act of harassment based on an inadmissible audio recording, and that an FRO was necessary to ensure plaintiff A.C.P.'s future protection. Our review of the record demonstrates the judge's findings are supported by sufficient credible evidence. Accordingly, we affirm.

I.

The parties met in 2015, dated until 2017, and had one daughter, P.T. They shared joint custody of P.T. with a parenting schedule. Since separating, the parties have each gotten married.

On September 1, 2022, plaintiff filed a domestic violence complaint and obtained a temporary restraining order (TRO). Plaintiff alleged that day defendant committed a predicate act of harassment by lifting her off the ground and inappropriately touching her beneath her dress. In the complaint, she also claimed that within two weeks of the incident, defendant inappropriately touched her buttocks, requested intercourse, and attempted to kiss her. Plaintiff also asserted a prior act of domestic violence. The complaint noted defendant

2

previously filed a TRO against plaintiff that was dismissed in March 2018. Notably, the record indicates plaintiff filed an amended TRO claiming further allegations of domestic violence and elaborated on certain claims, but the TRO was not provided on appeal.

At the FRO trial, plaintiff testified that on September 1 she drove to P.T.'s school for kindergarten orientation. Defendant arrived separately with P.T. in his car. After the parties stepped out of their vehicles, and were in the school parking lot, defendant "asked [her] for a hug" in the presence of P.T. Defendant "grabbed [her] really tightly," "lifted [her] . . . off the ground," "stuck his hand underneath [her] dress and swiped his . . . hand across [her] vagina and up through the back of [her] behind." Plaintiff "scream[ed] and kick[ed] and ask[ed] him to get off" her. P.T. began "hitting" defendant to stop. Defendant then "grabbed" plaintiff's face and told her "to kiss him." She relayed it made her feel "dirty" and "powerless."

After the orientation, defendant, P.T., and plaintiff drove in separate cars to plaintiff's house. Shortly after, defendant drove plaintiff and P.T. to McDonald's. Plaintiff recorded her conversation with defendant in the vehicle.

She testified that in the two weeks before the September 1 incident, defendant requested she have intercourse with him in exchange for allowing

3

their daughter to participate in extracurricular activities, and attempted to kiss her while she was in her vehicle. Plaintiff relayed defendant previously called her a whore, and "slammed" her onto a bed. She explained he exploited her history of being "trafficked" and she needed an FRO for her protection.

During defendant's testimony, he admitted he hugged plaintiff, touched her buttocks, and discussed intercourse, but maintained nothing further occurred on September 1. He contended plaintiff threatened him with legal action if P.T. was not permitted to enroll in cheerleading.

During defendant's cross-examination, the recording was played in three parts over defense counsel's objection. Plaintiff's counsel represented that the recording was divided into three parts because the size of the recording was too large to send in one email. In the recording, plaintiff commented that she didn't grab defendant's "ass and try to kiss" him every time she saw him. Defendant responded, "I'll never do it again then." Defendant did not dispute the conversation occurred while plaintiff was in his vehicle, but averred it was not the whole conversation. Defendant again acknowledged on cross-examination that he hugged plaintiff, touched her buttocks, and discussed intercourse with her.

A-1071-22

After hearing the testimony and reviewing the evidence, the judge found plaintiff proved by a preponderance of the evidence the predicate act of harassment. The judge also found that an FRO was necessary to protect plaintiff from immediate or future acts of domestic violence.

On appeal, defendant argues the judge erred because she: improperly admitted the audio recording into evidence; failed to analyze the relevant factors under prong two of Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006); incorrectly determined the FRO was necessary to protect plaintiff from future acts of domestic violence; and improperly allowed plaintiff to testify to acts of domestic violence beyond her claims "in the TRO complaints in violation of" defendant's "right to due process."

II.

Our review of an FRO issued after a bench trial is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). In reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div. 2023) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). Trial court findings are "binding on appeal when supported by adequate,

substantial, credible evidence." G.M. v. C.V., 453 N.J. Super. 1, 11 (App. Div. 2018) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).

We do not disturb a trial judge's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise.'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare, 154 N.J. at 412). However, we review de novo a trial judge's legal conclusions. C.C., 463 N.J. Super. at 429.

The New Jersey Legislature enacted the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. The PDVA protects victims of domestic violence, which include, among others, "any person . . . who has been subjected to domestic violence by a person with whom the victim has a child in common." N.J.S.A. 2C:25-19(d); R.G. v. R.G., 449 N.J. Super. 208, 219-20 (App. Div. 2017) (recognizing the amended definition of "[v]ictim of domestic violence" evinced "the Legislature's intent to broaden the application" of the PDVA).

The entry of an FRO under the PDVA requires the trial judge to make certain findings pursuant to a two-step analysis delineated in Silver, 387 N.J. Super. at 125-27. Initially, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). The judge is also required to consider "any past history of abuse by a defendant as part of a plaintiff's individual circumstances and, in turn, factor that history into its reasonable person determination." Cesare, 154 N.J. at 403. "'A single act can constitute domestic violence for the purpose of the issuance of an FRO,' even without a history of domestic violence." C.C., 463 N.J. Super. at 434-35 (quoting McGowan v. O'Rourke, 391 N.J. Super. 502,

506 (App. Div. 2007)). Secondly, if a predicate act is proven, the judge must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or further acts of abuse. Silver, 387 N.J. Super. at 127. A previous history of domestic violence between the parties is one of six non-exhaustive factors a court is to consider in evaluating whether a restraining order is necessary to protect the plaintiff. N.J.S.A. 2C:25-29(a)(1); see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (finding whether a judge should issue a restraining order depends, in part, on the parties' history of domestic violence).

Harassment, N.J.S.A. 2C:33-4, is a predicate act of domestic violence enumerated under the PDVA, N.J.S.A. 2C:25-19(a)(13). Under N.J.S.A. 2C:33-4(a) to (c), a person commits an act of harassment "if, with purpose to harass another, he":

> [(a)] Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> [(b)] Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> [(c)] Engages in any other course of alarming conduct or of repeatedly committed acts with

8

purpose to alarm or seriously annoy such other person.

To commit harassment, a defendant must "act with the purpose of harassing the victim." D.M.R., 467 N.J. Super. at 323. "'A finding of purpose to harass may be inferred from the evidence presented' and from common sense and experience." Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003)). "Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. 487. A judge must consider "the totality of the circumstances to determine whether the harassment statute has been violated." H.E.S., 175 N.J. at 326 (quoting Cesare, 154 N.J. at 404).

III.

Guided by these principles, we discern no basis to disturb the judge's entry of an FRO against defendant. We reject defendant's argument that the judge wrongly admitted the audio recording into evidence because it "w[as] undeniably inauthentic and unduly prejudicial." Plaintiff testified that she "recorded" defendant in his vehicle, and it was the whole recorded conversation. Defendant acknowledged the recording was made when the parties "were going to McDonald[']s," but claimed it was not the whole conversation. Defendant did

9

not testify as to what was missing from the recording or clarify why he believed it was incomplete. Thus, his mere assertion that the recording is unduly prejudicial because it was incomplete is unsupported. Our Supreme Court has stated when addressing the admission of only part of a conversation, "the question of whether a defect in a recording warrants exclusion is a matter entrusted to the trial judge's discretion." See State v. Nantambu, 221 N.J. 390, 408 (2015) (citing State v. Driver, 38 N.J. 255, 288 (1962)).

As the judge noted, defendant admitted to hugging and touching plaintiff inappropriately before the admission of the recording. Although the judge advised defense counsel she would "certainly hear" argument after the recording was played, counsel did not renew the objection. We review a court's evidentiary rulings "under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). We discern no reason to disturb the judge's admission of the recording.

We also reject defendant's argument that the judge "failed to perform the requisite analysis . . . of the six factors under [N.J.S.A.] 2C:25-29(a)(1)[ to (6)]." After finding the predicate act of harassment based on defendant's admissions

and plaintiff's credible testimony, the judge considered the history of domestic violence between the parties, finding plaintiff testified "convincingly." The judge found credible plaintiff's testimony of defendant's prior harassing acts of inappropriately touching plaintiff, discussing intercourse, and attempting to kiss her, which occurred two weeks before the September 1 incident.

Before making her findings under the second Silver prong, the judge correctly noted, "the [c]ourt has to find . . . a restraining order is necessary to protect . . . [p]laintiff from immediate danger or to prevent further abuse," and specifically weighed if the FRO was not issued "what's going to stop this [d]efendant." The judge credited that "there [wa]s a history between the parties" and found credible prior incidents occurred before and after the parties' separation. See N.J.S.A. 2C:25-29(a)(1).

During the trial, when defense counsel objected to plaintiff's testimony regarding defendant's harassment, the judge referenced and examined the amended TRO to ensure plaintiff's testimony fell within what was noticed in the complaint. After examining the amended TRO, the judge stated, "[o]kay. So it's there." Further, given defendant admitted to previously discussing sexual intercourse with plaintiff in the presence of P.T., the judge correctly acknowledged that defendant's inappropriate behavior could not continue to

"happen in the presence of the child and it [did] happen[] in the presence of the child." See N.J.S.A. 2C:25-29(a)(4). In her decision, the judge noted that the parties shared custody of P.T. and had a parenting schedule. The judge ultimately determined the FRO was necessary to prevent the reoccurrence of defendant's harassing conduct and "to prevent . . . defendant from feeling like he c[ould] hug [plaintiff] when he want[ed] or touch her when he want[ed] or try to grab her face to kiss her when he want[ed] or speak to her in that way . . . about sexual things." See N.J.S.A. 2C:25-29(a)(2).

A review of the record demonstrates the judge's finding that an FRO was necessary to prevent further abuse to plaintiff was supported by substantial credible evidence. As we conclude the judge made sufficient findings under the second prong of Silver, we need not address defendant's further arguments that insufficient evidence supported an FRO for plaintiff's protection.

Lastly, defendant's contentions that the judge erred in permitting and considering testimony of plaintiff regarding defendant's alleged criminal sexual contact beyond "the four corners of the complaint" are misplaced. Although at the beginning of the trial plaintiff's counsel requested to "check[] off" criminal sexual contact in the amended TRO without amending the complaint to add "any additional facts," the judge sustained defense counsel's objection. The judge

12

found defendant committed the predicate act of harassment, citing N.J.S.A. 2C:33-4, and his behavior was "alarming, annoying, and troublesome." Defendant's contentions that the judge considered the predicate act of criminal sexual contact are unsupported. We are satisfied that defendant had sufficient "notice . . . and an adequate opportunity to prepare and respond" to the alleged predicate act of harassment. J.D., 207 N.J. at 478 (quoting H.E.S, 175 N.J. at 321).

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1071-22