NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3588-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

KYLE P. BROWN, a/k/a
KYLE PATRICK BROWN,

      Defendant-Appellant.

_____

          Argued November 18, 2019 – Decided March 10, 2020

          Before Judges Sabatino, Sumners and Geiger.

          On appeal from the Superior Court of New Jersey, Law
          Division, Middlesex County, Indictment No. 16-10-
          1680.

          Patrick Michael Megaro argued the cause for appellant
          (Halscott Megaro, PA, attorneys; Patrick Michael
          Megaro, on the briefs).

          David Michael Liston, Special Deputy Attorney
          General/Acting Assistant Prosecutor, argued the cause
          for respondent (Christopher L.C. Kuberiet, Acting
          Middlesex County Prosecutor, attorney; David Michael
          Liston, of counsel and on the brief).

      The opinion of the court was delivered by

SUMNERS, JR., J.A.D.

A jury found defendant Kyle P. Brown guilty of third-degree arson, N.J.S.A. 2C:17-1(b), and second-degree causing or risking widespread injury or damage, N.J.S.A. 2C:17-2(a)(1), as a result of setting fire to, and causing an explosion of, his parked car in a sparsely-filled parking lot adjacent to his apartment building in the early morning hours. He appeals his convictions contending:

> POINT I
>
> BECAUSE THERE WAS INSUFFICIENT EVIDENCE THAT THE [DEFENDANT] CAUSED AN "EXPLOSION" WITHIN THE MEANING OF N.J.S.A. 2C:17-2(a)(1) AND N.J.S.A. 2C:17-1(b), THIS COURT SHOULD REVERSE AND GRANT HIM A JUDGMENT OF ACQUITTAL; FURTHER, THE TRIAL COURT SHOULD HAVE ENTERED A JUDGMENT OF ACQUITTAL BECAUSE THE CONDUCT PROHIBITED BY N.J.S.A. 2C:17-2(a)(1) WAS IMPROPERLY APPLIED AGAINST THE DEFENDANT-APPELLANT AND THE FACTS OF THIS CASE.
>
> POINT II
>
> BECAUSE A CRITICAL VIDEO RECORDING WAS NOT PROPERLY AUTHENTICATED AND BECAUSE THE STATE FAILED TO PRESERVE THE ORIGINAL EVIDENCE, THE DENIAL OF THE DEFENSE MOTION IN LIMINE, WITHOUT AN EVIDENTIARY HEARING, WAS REVERSIBLE ERROR WHICH WAS LATER COMPOUNDED BY THE TRIAL COURT'S REFUSAL TO ADMINISTER

TO THE JURY AN ADVERSE INFERENCE INSTRUCTION.

    A. Because State's Exhibit 17A Was Not Properly Authenticated, Its Admission Was Clear Error and an Abuse of Discretion.

    B. The Erroneous Admission of the Video Was Compounded [b]y the Trial Court's Refusal, In Spite of the State's Later-Rescinded Concession, to Issue an Adverse Jury Instruction.

POINT III

BECAUSE THE EVIDENCE PRESENTED TO THE GRAND JURY WAS KNOWINGLY MISLEADING AND INSUFFICIENT TO ESTABLISH THIRD[-]DEGREE ARSON AND SECOND[-]DEGREE RISKING WIDESPREAD INJURY AND/OR DAMAGE, THE TRIAL COURT'S REFUSAL TO DISMISS THOSE COUNTS WAS ERRONEOUS.

POINT IV

THE TRIAL COURT'S ADMISSION OF NEW EVIDENCE THAT WAS "DISCOVERED" MID-TRIAL AND NOT PREVIOUSLY DISCLOSED PRIOR TO TRIAL, AND WHICH LATE DISCLOSURE DEPRIVED [DEFENDANT] OF THE OPPORTUNITY TO INVESTIGATE AND VERIFY[,] DEPRIVED [DEFENDANT] OF THE OPPORTUNITY TO PRESENT A DEFENSE AND VIOLATED RULE 3:13-3(f).

POINT V

BECAUSE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE, THE TRIAL COURT'S REFUSAL TO GRANT [DEFENDANT]'S RULE 3:20-1 MOTION WAS ERRONEOUS.

POINT VI

THE TRIAL COURT'S PRECLUSION OF EXCULPATORY EVIDENCE THAT HAD ALREADY BEEN INTRODUCED INTO EVIDENCE BY THE STATE VIOLATED [DEFENDANT]'S RIGHT TO PRESENT A DEFENSE AND VIOLATED THE RULE OF COMPLETENESS.

For the reasons that follow, we hold the trial judge did not err in denying defendant's motion for acquittal of third-degree arson and second-degree causing or risking widespread injury or damage because there was sufficient evidence to establish defendant caused a fire and explosion as set forth in N.J.S.A. 2C:17-1(b), and an explosion as set forth in N.J.S.A. 2C:17-2(a)(1).

In the unpublished portion of this opinion, we affirm the trial judge's: (1) denial of defendant's motion to dismiss the indictment due to lack of prima facie evidence that defendant committed third-degree arson and second-degree causing or risking widespread injury or damage because the jury's guilty verdict overrides the claim of prejudice in the grand jury process; (2) admission of documentation of defendant's purchase of a gas can because there was no abuse

4

of discretion; (3) denial of defendant's motion for a new trial because there was no showing of a clearly and convincingly manifest denial of justice; and (4) refusal to require the State to play parts of non-testifying defendant's recorded police statement where he denied setting the fire was not an abuse of discretion because the exculpatory statements did not provide context to the inculpatory statements admitted into evidence. We affirm.

## I.

We summarize the procedural history and trial testimony pertinent to this appeal.

### A. Pre-trial Proceedings

A Middlesex County grand jury charged defendant with second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(1) (knowingly placing another person in danger of death or bodily injury) and/or N.J.S.A. 2C:17-1(a)(3)(arson with the purpose of collecting insurance) (count one); third-degree arson, N.J.S.A. 2C:17-1(b)(1), (2), (3) or (5) (purposely starting a fire or an explosion under certain circumstances) (count two); fourth-degree arson, N.J.S.A. 2C:17-1(c)(2) (count three); second-degree risking widespread injury or damage, N.J.S.A. 2C:17-2(a)(1) (count four); fourth-degree risking widespread injury or damage,

N.J.S.A. 2C:17-2(c) (count five); and fourth-degree risking widespread injury or damage, N.J.S.A. 2C:17-2(d)(2) (count six).

Defendant's motion to dismiss the indictment was granted in part. The judge dismissed counts three, five, and six in their entirety as well as the portion of count one alleging violation of N.J.S.A. 2C:17-1(a)(1), purposely placing another person in danger. The judge declined to dismiss counts two, four, and the portion of count one alleging violation of N.J.S.A. 2C:17-1(a)(3), arson to collect insurance.

Defendant also filed a motion in limine to exclude cell phone video footage taken of a screen displaying surveillance camera video from a nearby bus stop. The judge denied defendant's motion because the cell phone video was authenticated by an eyewitness, who was at the bus stop, and saw the fire and heard the explosion.

B. Trial

Testifying on behalf of the State, Brooke McClarren stated that around 2:00 a.m. on October 15, 2015, she and a friend were at a bus stop outside the Buell Apartments (Buell) at Rutgers University when she heard a loud explosion sounding like a cannon. Looking at a "nearby [nearly] empty parking lot," with a few parked cars, she saw one of the cars on fire.

McClarren called 9-1-1, reporting a "smell of gas from a while away" and "there's like a [sic] exploding sound." She also commented, "[t]he car is on fire, and some of the bushes around the car are on fire," with the car being "pretty far" from the building. A recording of her call was played for the jury. McClarren also authenticated the cell phone video that recorded surveillance camera video footage of the area at the time of the incident. She confirmed the video accurately showed her at the bus stop and a flash of light occurred simultaneously with a loud cannon-like explosion she remembered hearing.

Rutgers University Emergency Services Lieutenant Michael Richards gave similar testimony. He stated that around 2:00 a.m. he went to the Buell parking lot with his partner Lieutenant William Schlick[1] in response to a report of a motor vehicle fire. Upon arrival, he saw "a vehicle parked in the back corner of the parking lot by the wood line with fire showing on the trunk of the vehicle." Noticing flames coming out of the gap between the trunk lid and the rear quarter panel of the vehicle on the passenger side, Lt. Richards put the visible fire out with a fire extinguisher, then saw an additional fire, which "[t]urned out to be a gas can . . . burning in the woods."

---

[1] Lt. Schlick was retired at the time of trial.

Initially, Lt. Richards did not notice any other parts of the vehicle on fire, but "[w]hen . . . check[ing] the passenger compartment of the vehicle . . . the windows were smoked over, and we were able to open the doors without a key or forcing entry." The "smoked over" windows meant there was "a fire that had been in the vehicle but had since died down," which caused "soot on the windows," according to the Lieutenant. A "fireball" came out from underneath the vehicle as they opened the car door. There appeared to be gasoline in the foot wells of the car. In addition, "[i]t appeared that the back seat was down on one side," which meant it was "possible that the soot or the smoke inside the passenger compartment could have come from the trunk and moved into the passenger compartment." Household items were inside the vehicle.

Captain Stephen Letts, employed by the State of New Jersey, Division of Fire Safety, State Fire Marshall's Office, Fire Investigation Unit, testified as a fire investigations expert. Cpt. Letts conducted the investigation of the car fire after he arrived at the scene at about 4:34 a.m., and opined:

> [I]t was honestly pretty obvious that this was an intentionally set fire. You had the amounts of gasoline that were poured throughout the vehicle, and there was a gas can within close proximity of the woods, in the woods area. It was within like five feet of the vehicle. . . . We labeled this as an incendiary cause classification which involves a deliberate act by a person or persons igniting a fire where a fire should not be.

In short, Cpt. Letts concluded "someone opened the trunk of this car, poured some gasoline into it, poured gasoline into the passenger compartment of the car, lit the car on fire from the trunk, closed the trunk, somehow lit the gas can on fire and left the scene."

Rutgers University Police Sergeant Joseph Ray was also involved in the fire investigation. Upon arriving at the scene around 5:00 a.m., he observed:

> [I]t looked like . . . the fire had started in the trunk area because that's where most of the damage was. . . . [T]he vehicle was stocked with a lot of items that were burnt also. There was some gasoline in the front driver [side] floor. There was some gasoline in the rear passenger side floor. There was a gas can off to the right . . . side of the vehicle in the wooded area closest to the passenger side of the vehicle. There was a book of burnt Shop-Rite matches in the rear of the vehicle . . . . And then the gas can nozzle was in the front passenger side floor area.

Sgt. Ray collected the gas can, although neither it nor the liquid in the can were submitted for lab analysis. Analysis of four sampled items – the front driver's side floor, the rear passenger's side floor, the driver's side floor mat, and the gas can's nozzle – by the New Jersey Office of Forensic Science were positive for gasoline. The matchbook came back negative for gasoline.

At around 8:00 a.m., Sgt. Ray interviewed defendant at the Rutgers University Police Headquarters after it was learned he was the owner of the fire

damaged car. Defendant was Mirandized[2] and chose to give a statement. Defendant, who began a master's program at Rutgers two months earlier, detailed what he did the day before and morning of the fire.

Defendant stated while he was driving to a Piscataway store where he paid cash to buy boxes, bubble wrap, candy, and a drink, he had a road-rage incident with another driver, who was only described as "Asian." According to defendant, they screamed at each other and he was briefly followed by the other driver. Upon returning to his apartment, defendant packed his car for a trip home to Pennsylvania; later deciding to leave the next day because he felt it was too late to drive when he finished packing. Around 10:30 or 11:00 p.m., he walked to a restaurant to buy dinner, but since it was closed, he ordered delivery which arrived at about 12:30 a.m. At 1:15 a.m. or 1:20 a.m., defendant went outside "for a walk to see if the main lobby was open so that I (indiscernible), so I walked over, walked around the building, like I said before, and looking, and it was locked, so I just walked back."

Defendant stated he had both car insurance and renter's insurance but told Sgt. Ray he was not certain the personal property in the car that was destroyed

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

would be covered.[3]  Except for the possibility of the road-rage driver, defendant had "no idea who would" set his car on fire.

Sgt. Ray continued his investigation by going to the store where defendant stated he bought some items the day before the fire.  The store provided him two still images of two different people buying a gas can that day.  In executing a search warrant for defendant's bedroom with a lock on it, Sgt. Ray found a gas can sticker inside the store's bag in a garbage can, and some credit and debit cards.  This led to defendant's arrest.

Sgt. Ray also obtained surveillance videos from Buell's surveillance system after he personally accessed the system, reviewed the recorded footage, supervised the downloading of the videos, and was present while they were transferred to a disk.  The State played for the jury, twelve entry and exit videos from Buell showing defendant.  The first video starts at 12:44 p.m. on October 14, 2015, and the last video ends at 2:10 a.m. on October 15, 2015.

---

[3]  In addition to clothes estimated to be more than $1200, defendant claimed his desktop computer, monitor, keyboard, keyboard mouse, microphone, "automation stuff" to control his lights, security camera, and "basically just a lot of electronics[,]" as well as a recently purchased desk, were valued around $7650.

Sgt. Ray further testified about two still photos from the videos that were shown to the jury. He described the first photo[4] as showing defendant leaving Buell wearing a black jacket and a black hat, and the second photo, occurring nineteen minutes later, showing defendant entering Buell without the jacket or hat. He testified that a photograph of the passenger compartment of the vehicle showed what appeared to be a black jacket on top of "boxes and stuff." The police did not search the car for a black jacket and hat, and they did not inventory anything in the car because there were "a lot of items [in the car] which you couldn't tell what they were because they were all burnt up inside."

Sgt. Ray was unable to export from the surveillance system a video of the bus stop depicting McClarren because the system was too old. He stated:

> At the time, bus stops went to a different system and we tried to export ourselves, but were unsuccessful. We used IT and Security Technologies to try to export it. And then eventually, . . . we didn't want to lose the footage, so it was recorded with a cell phone and then saved that way.

To further explain the surveillance camera system, Kenneth Ackerman, a manager in the Security Technologies Unit at Rutgers University, testified that although the bus stop at Buell Apartments had several DVR systems in place at

---

[4]  The time stamp on the photo was 1:50:02 p.m. on October 15, 2015, but the time stamp was fast by twelve hours and eight minutes.

the time of the fire, there was no backup system. He stated, normally, there would be no reason for an "individual to use a separate video camera to take a shot of the screen."

After the State rested, defendant renewed his objection to admitting the cell phone video into evidence. Again, the judge denied the motion, essentially for his initial reasons. The judge noted, "the State, in fact, put a witness on who explained why the [video]tape is unavailable and . . . why the [cell phone] had to be used to record what was on the original [video]tape."

The State's attempt to introduce video evidence of defendant's store purchase was denied because the State could not authenticate the video. Instead, the State presented Alexis Damon, an assistant manager at the Piscataway store, who authenticated the store's record of a transaction number from October 14, 2015, at 12:15:07, showing the purchase of a five-gallon gas can using a credit card with the last four account numbers that matched the last four digits on one of the credit cards Sgt. Ray collected from defendant when he was arrested.

Defendant's objection to the document's admission was denied. He argued the document's production in the middle of the trial was an "unfair surprise," because it had not been disclosed prior to trial. The judge determined there was no unfair surprise because defendant was aware that evidence of his purchase

13

would be produced, albeit in a different format. The judge remarked, defendant "knew the State intended to at least attempt to introduce into evidence that the defendant engaged in a transaction . . . [at the store]" and that the information about the transaction and defendant's credit card numbers had been available in the initial police reports. The judge concluded that "the prejudice that the late revelation of this discovery imposes on the defendant . . . does not outweigh the probative value." Yet, to address defendant's concerns regarding the document's mid-trial production, the judge offered him an adjournment to investigate the transaction. There is no indication that defendant took advantage of the offer.

After the State rested, the judge granted in part defendant's motion for a judgment of acquittal. The remaining portion of count one alleging a purpose of collecting insurance and part of count two alleging starting a fire or causing an explosion with the purpose of collecting insurance were dismissed. Defendant's renewed application at the close of his case to dismiss the remaining parts of counts two and four was denied. Defendant exercised his right not to testify.

Although the parties initially agreed to an adverse inference charge on spoliation of the surveillance camera video depicting the explosion, the State changed its position during the jury charge conference. After argument, the

judge denied defendant's request for an adverse inference charge because the cell phone video was properly authenticated by McClarren and Sgt. Ray, and the limitations of exporting a video from the surveillance system was explained by Ackerman.

After the jury found defendant guilty of arson (count two) and risking widespread injury and/or damage (count four), the judge denied defendant's motions for a new trial, or for a judgment of acquittal, and bail pending appeal. Defendant was later sentenced to an aggregate five-year prison term. This appeal followed.[5]

## II.

In Point I, defendant contends the trial judge erred in denying his motion for acquittal on counts two and four because there was insufficient evidence to establish that he caused an explosion, "which is an indispensable element of both counts." He argues the fireball seen on the surveillance video is not an explosion, and no expert opined that an explosion occurred. He emphasizes no explosion occurred where there was a fire "in an isolated area of a parking lot

---

[5] This court denied defendant's motion for bail, finding that "[t]he trial court did not misapply its discretion or the factors under Rule 2:9-4 in denying bail pending appeal."

that contained no people at almost 2:00 a.m.," and there was no "evidence of violent damage to the car, a debris field, [or] broken windows." We disagree.

We begin with a review of our guidelines regarding a judgment of acquittal. A court shall enter an order for a judgment of acquittal only "if the evidence is insufficient to warrant a conviction." R. 3:18-1. The long-established standard to determine a motion for a judgment of acquittal at the conclusion of the State's case was articulated in State v. Reyes, 50 N.J. 454 (1967):

> [T]he question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [Id. at 458-59 (citing State v. Fiorello, 36 N.J. 80, 90-91 (1961)).]

Under Rule 3:18-1, the court "'is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State.'" State v. Papasavvas, 170 N.J. 462, 521 (2002) (quoting State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974)). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey,

179 N.J. 229, 236 (2004). We apply this same standard on appeal. State v. Kittrell, 145 N.J. 112, 130 (1996).

Next, because defendant questions the meaning of the word "explosion" as applied to N.J.S.A. 2C:17-1(b) and N.J.S.A. 2C:17-2(a)(1), we examine our rules of statutory construction. In determining the interpretation of a statute, our review is de novo. State v. Frank, 445 N.J. Super. 98, 105 (App. Div. 2016). It is well settled that a primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We start with considering "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" Ibid. And where "'the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids.'" Ibid. Hence, we do "not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (alteration in original) (quoting Marino v. Marino, 200 N.J. 315, 329 (2009)).

Yet, a statute's plain language "should not be read in isolation, but in relation to other constituent parts so that a sensible meaning may be given to the

whole of the legislative scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). "'When all is said and done, the matter of statutory construction . . . will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation.'" J.H. v. R&M Tagliareni, LLC, 454 N.J. Super. 174, 187 (2018) (quoting Jersey City Chapter, P.O.P.A. v. Jersey City, 55 N.J. 86, 100 (1969)), rev'd on other grounds, 239 N.J. 198 (2019). A "common-sense approach often begins with an examination of dictionary definitions." Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 426 (2016). Simply put, "[a]n absurd result must be avoided in interpreting a statute." Gallagher v. Irvington, 190 N.J. Super. 394, 397 (App. Div. 1983).

Applying these well-established principles, we discern no basis to set aside the jury verdict because the State presented sufficient evidence to sustain the convictions.

For defendant to be convicted for third-degree arson under N.J.S.A. 2C:17-1(b), there must be proof that "he purposely starts a fire or causes an explosion, whether on his own property or another's." (Emphasis added). The plain reading of the statute does not demand proof that an explosion occurred in

A-3588-17T4

order to sustain a conviction, merely proving a fire occurred satisfies an element of the offense. Accordingly, this contention has no merit.

In order for defendant to be convicted for second-degree risking widespread injury or damage under N.J.S.A. 2C:17-2(a)(1), there must be proof that he "purposely or knowingly, unlawfully causes an <u>explosion</u>, flood, avalanche, collapse of a building, release or abandonment of poison gas, radioactive material, or any other harmful or destructive substance . . . ." (Emphasis added). Defendant seeks to interpret the term "explosion" based on the perceived meaning of the remaining terms in N.J.S.A. 2C:17-2(a)(1) through the principle of <u>noscitur a sociis</u>, meaning "words may be indicated and controlled by those with which they are associated." <u>Herzog v. Twp. of Fairfield</u>, 349 N.J. Super. 602, 607 (App. Div. 2002) (quoting <u>Germann v. Matriss</u>, 55 N.J. 193, 220 (1970)). We reject this reasoning.

All the words in the statute connote serious harm, i.e., "flood, avalanche, collapse," among others. Regardless of <u>noscitur a sociis</u>, which is "not [an] absolute" rule and should only be viewed as "a helpful guide," <u>ibid.</u> (quoting <u>Germann</u>, 55 N.J. at 221), the term "explosion" is appropriately grouped with other potentially significant hazards. The fact that one could imagine a less lethal "explosion" does not render its inclusion ambiguous when less lethal

versions of the remaining terms could also be imagined. Contrary to defendant's assertion, the terms "flood" and "avalanche" are not "tantamount to terrorism in which the safety of large groups of citizens are threatened."

Considering the video of the fireball and McClarren's testimony confirming her observation of the fireball simultaneous with the sound of a cannon-like explosion, the judge refused to order an acquittal because there was sufficient proof beyond a reasonable doubt that "there was some sort of explosion" under N.J.S.A. 2C:17-2(a)(1).[6] The judge determined it was for the jury to decide whether defendant purposely or knowingly set the fire for the purpose of causing the car to explode. We concur with this reasoning. The common meaning of the term "explosion" does not require that it "cause or risk injury to a large group of people" as defendant asserts. Expert testimony is not required when the term is unambiguous. There is no evidence of legislative intent to exclude the factual scenario in this case – a car with gasoline in its tank set on fire and bursting into a fireball – from qualifying as an explosion. Hence, we are convinced that denial of defendant's motion for a judgment of acquittal

---

[6] As part of our review of the record on appeal, we have seen the video. Nothing in the video materially contradicts the trial judge's factual findings. See State v. S.S., 229 N.J. 360, 374-81 (2017) (clarifying the limited scope of appellate review of factual findings based on video evidence).

was proper because the evidence supported the jury's guilty verdict on count four that defendant violated N.J.S.A. 2C:17-2(a)(1).

## III.

In Point II, defendant asserts it was error to admit a cell phone video of the surveillance video of the bus stop because it was not properly authenticated. He also asserts an adverse inference charge was required to "signal[] to the jury the importance of the authenticity requirement." Given that the video was "critical to the State's case," defendant maintains his convictions should be reversed and a new trial be ordered. We are unpersuaded.

A judge's decision to admit or exclude evidence is "entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment." Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "Although a trial court retains broad discretion in determining the admissibility of evidence, that discretion is abused when relevant evidence offered by the defense and necessary for a fair trial is kept from the jury." State v. Cope, 224 N.J. 530, 554-55 (2016). "Thus, we will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

It is well-settled that a videotape "qualifies as a writing[ ]" under N.J.R.E. 801(e) and must be "properly authenticated" before being admitted.  See State v. Wilson, 135 N.J. 4, 17 (1994).  Under N.J.R.E. 901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims."  The authentication rule "does not require absolute certainty or conclusive proof."  State v. Mays, 321 N.J. Super. 619, 628 (App. Div. 1999). "The proponent of the evidence is only required to make a prima facie showing of authenticity."  Ibid. (citations omitted).  "Once a prima facie showing is made, the [item] is admissible, and the ultimate question of authenticity of the evidence is left to the jury."  Ibid. (citations omitted).

Authentication of a videotape is similar to the authentication of a photograph.  State v. Loftin, 287 N.J. Super. 76, 98 (App. Div. 1996). "[T]estimony must establish that the videotape is an accurate reproduction of that which it purports to represent and the reproduction is of the scene at the time the incident took place."  Ibid. (citing Wilson, 135 N.J. at 15).  The photographer or videographer need not testify "because the ultimate object of an authentication is to establish its accuracy or correctness."  Wilson, 135 N.J. at

14. Thus, "any person with the requisite knowledge of the facts represented in the photograph or videotape may authenticate it." Ibid.

"[R]eliability is the decisive factor in determining the admissibility of a recording." State v. Nantambu, 221 N.J. 390, 395 (2015). The determination is "a highly fact-sensitive analysis, requiring consideration not only of any gaps or defects in the recording but also the evidential purposes for which the recording is being offered." Ibid.

A duplicate is usually admissible to the same extent as an original. A duplicate includes "a counterpart . . . produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and reductions, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent technique which accurately reproduces the original." N.J.R.E. 1001(d). N.J.R.E. 1003 states: "A duplicate . . . is admissible to the same extent as an original unless (a) a genuine question is raised as to the authenticity of the original, or (b) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Based on our review of the record, we conclude the court's decision to admit the video footage was not an abuse of discretion. McClarren authenticated the video by identifying herself and by testifying that the video accurately

23

depicted what she observed in the early hour of October 15, 2015 at the parking lot next to the Buell Apartments. Sgt. Ray and Ackerman explained why a cell phone video of the surveillance camera video was necessary. And defendant presented no evidence undermining the reliability of Sgt. Ray's cell phone video.

Turning to defendant's claim that the judge failed to give an adverse inference charge due to the absence of the original video from the Buell Apartments' surveillance camera system, we review the failure to charge for an abuse of discretion. State v. Dabas, 215 N.J. 114, 132 (2013). "An adverse inference charge may be warranted when a party's failure to present evidence 'raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him.'" Torres v. Pabon, 225 N.J. 167, 181 (2016) (quoting State v. Clawans, 38 N.J. 162, 170 (1962)). That was not the case here, because the State preserved the video evidence of the explosion though Sgt. Ray's cell phone video of the surveillance video. As the judge properly determined, the State's witnesses documented that because the original surveillance video could not be preserved, an accurate duplicate was successfully made and shown to the jury. Thus, no adverse inference charge was necessary where the relevant evidence was not lost or destroyed.

IV.

In Point III, defendant contends his motion to dismiss the indictment should have been granted given the lack of a prima facie case that he committed third-degree arson and second-degree causing or risking widespread injury or damage. He claims the only grand jury testimony connecting him to setting the fire was Sgt. Ray's incorrect testimony that his "hands had burn marks on them." He contends the alleged burn marks were in fact poison ivy as diagnosed by medical staff at the Middlesex County Jail. Defendant also contends there was no evidence before the grand jury that he caused an explosion or that his alleged actions placed another in danger of bodily injury.

Defendant's contention is without merit as the United States Supreme Court has made clear that an ensuing guilty verdict by a jury can vitiate such a claim of prejudice in the grand jury process when the error "was harmless beyond a reasonable doubt." United States v. Mechanik, 475 U.S. 66, 70 (1986); see also State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1994).

V.

In Point IV, defendant argues the store documentation showing he used his credit card to purchase a gas can the afternoon before the fire violated Rule 3:13-3 because it was not produced by the State in pretrial discovery and,

therefore, should not have been admitted at trial. In receiving the documentation during the trial, he argues he did not have "the opportunity to gather records from [the store] and the credit card company to independently verify the information, and to formulate a challenge." He therefore claims his constitutional due process rights were violated and he was deprived of his right to a fair trial by its late disclosure. We disagree.

A criminal defendant is "entitled to broad discovery under Rule 3:13-3," State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009), and our Supreme Court has recognized "our longstanding case-law view in favor of the exchange of pretrial discovery and the court rule that makes pretrial access to the evidence a critical right for all defendants," State v. Scoles, 214 N.J. 236, 257 (2013). The State has a continuing duty to provide the requisite discovery during the course of a criminal proceeding. R. 3:13-3(f). Where a trial judge determines the State has failed to comply with its discovery obligations under our court rules, the judge "may order such party to permit the discovery of materials not previously disclosed, grant a continuance or delay during trial, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate." Ibid. (emphasis added).

Similar to our review of a trial court's evidential ruling, we afford "[a] trial court's resolution of a discovery issue . . . substantial deference and [it] will not be overturned absent an abuse of discretion." State v. Washington, 453 N.J. Super. 164, 179-80 (App. Div. 2018) (quoting State v. Stein, 225 N.J. 582, 593 (2016)). We review "the meaning or scope of a court rule . . . de novo" and "do not defer to the interpretations of the trial court . . . unless we are persuaded by [its] reasoning." Id. at 180 (second and third alterations in original) (quoting State v. Tier, 228 N.J. 555, 561 (2017)).

In considering the ramifications of late discovery, we recognize "'the sanction of preclusion is a drastic remedy and should be applied only after other alternatives are fully explored[.]'" Id. at 190 (alteration in original) (quoting State v. Scher, 278 N.J. Super. 249, 272 (App. Div. 1994)). Rule 3:13-3(f) "specifically provides for discretion in formulating a sanction for a discovery violation," State v. Clark, 347 N.J. Super. 497, 509 (App. Div. 2022), and expressly allows for an order "prohibit[ing a] party from introducing . . . the material not disclosed," Rule 3:13-3(f). "An adjournment or continuance is a preferred remedy where circumstances permit." Clark, 347 N.J. Super. at 509.

Guided by these principles, we discern no basis to conclude the court's allowance of the store's documentation of defendant's purchase of a gas can

constituted an abuse of discretion. There was no unfair surprise to defendant when the store document was produced during trial. Defendant was on notice that the video of him purchasing a gas can at the store could be shown at trial. This gave him the opportunity to obtain his own documentation disputing that he was present at store at that time or that he purchased the gas can. Moreover, assuming defendant was surprised about the purchase linked to his credit card, in accordance with <u>Rule</u> 3:13-3(f), the judge allowed him an adjournment to give him time to respond. Defendant declined to do so. Thus, it is disingenuous for him to claim foul on appeal. Lastly, we note that defendant has not produced any post-trial evidence that would refute his purchase or the use of his credit card to purchase the gas can. <u>See</u> <u>State v. Carter</u>, 85 N.J. 300, 314 (1981) (setting forth the guidelines for when newly discovered evidence entitles a defendant to a new trial).

## VI.

In Point V, defendant argues that his <u>Rule</u> 3:20-1 motion for a new trial should have been granted because the verdict was against the weight of the evidence. We disagree.

A trial judge may set aside a jury verdict and grant a motion for a new trial only where "having given due regard to the opportunity of the jury to pass

A-3588-17T4

upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." R. 3:20-1. Furthermore, a trial court's ruling on a motion for a new trial shall not be reversed unless it clearly appears there was a miscarriage of justice under the law. R. 2:10-1; see also State v. Carter, 91 N.J. 86, 96 (1982) (a reviewing court must "determine whether any trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present.").

Defendant has not presented any sound reason why we should conclude the judge's refusal to grant him a new trial was a miscarriage of justice. There was ample circumstantial evidence to support the jury's guilty verdict:

- Defendant's car was parked in the back area of the parking lot – away from other cars – next to his apartment building.

- There was uncontroverted evidence from the police investigation that the car was set on fire through the lighting of gasoline poured inside the car from a gas can found in the adjacent woods.

- The store purchase transaction of a gas can using a credit card with the last four numbers matching the last four numbers of defendant's credit card found in his possession when he was arrested strongly pointed to his purchase of a gas can.

- The fact that defendant's police statement did not disclose he had purchased a gas can when he went

to the store, claiming he paid cash for different items, undermined the veracity of his statement.

- The video footage showed defendant leaving his apartment building with a coat and hat on and returning without those items soon after the fire was set. A photograph shows that a coat was in the pile of burned items in the car.

- Other than an unnamed individual with whom defendant claimed he had a road-rage incident after leaving the store, the State could not identify anyone who had a motive to destroy defendant's property based upon defendant's statement.

In sum, we discern no abuse of discretion in the judge's ruling and there was no "clear and convincing evidence that there has been a manifest denial of justice under the law" in the jury guilty verdict.

## VII.

In Point VI, defendant contends, based on the doctrine of completeness, the trial court should have required the State to play parts of his recorded police statement during which he unequivocally denied setting the fire. He argues the doctrine establishes "the opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance." State v. Lozada, 257 N.J. Super. 260, 270 (App. Div. 1992)

(quoting 7 John H. Wigmore, Evidence, § 2113 at 653 (Chadbourn rev. ed. 1978)).

During summation, the State argued, due to consciousness of guilt, defendant omitted purchasing the gas can when he provided a list of items purchased at the store and pushed back the time he got back from the store because he "doesn't want the police to know when he was at [the store]." Defendant contends he should not have had to choose between "forgo[ing] presentation of evidence that exculpated him, or waiv[ing] his right to remain silent and take the witness stand." Defendant asserts the doctrine of completeness mandated the remaining exculpatory portion of defendant's statement be admitted to counter the asserted consciousness of guilt. He contends the judge's error in excluding his exculpatory comments was not harmless and mandates reversal of his conviction. We are unpersuaded.

As noted above, we consider the judge's ruling on the admissibility of evidence on an abuse of discretion standard, Griffin 225 N.J. at 413, and only reverse if we conclude there was "manifest denial of justice," Green, 160 N.J. at 492. It is within the judge's discretion to determine whether the doctrine of completeness applies such that the admission of an inculpatory part of a

31

statement calls for admission of an exculpatory part of the statement.  State v.

DeRoxtro, 327 N.J. Super. 212, 224 (App. Div. 2000).  Specifically,

> [u]nder the doctrine of completeness, another writing or tape recording is "required to be read [or heard] if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding."
>
> [State v. Gomez, 246 N.J. Super. 209, 220 (App. Div. 1991) (alteration in original) (quoting United States v. Soures, 736 F.2d 87, 91 (3d Cir. 1984)).]

Applying these principles, we conclude the judge did not abuse his discretion in denying defendant's request to present to the jury his police statement denying he set his car on fire.  Defendant's assertion of innocence in no way explains his statement concerning his actions the day before the fire and early in the morning on the day of the fire.  The excluded exculpatory statement was also unnecessary to provide context or to avoid misleading the jury with respect to the purchased items because at no point during the statement presented to the jury did defendant admit guilt.  The introduction of a hearsay statement is not required to "insure a fair and impartial understanding" when the declarant is available to testify.

The State was appropriately permitted to introduce part of defendant's hearsay police statement under Rule 803(b)(1) as a "statement offered against a

party which is: (1) the party's own statement, made either in an individual or in a representative capacity." However, this exception does not apply to a statement offered by the party who made the statement. We therefore favor the judge's ruling: "[A] statement made by a defendant can be used against a defendant; . . . it can't be used . . . to . . . bolster his denial or your defense. If he wants to deny that he did it, he can always take the stand." Defendant fails to cite any hearsay exception allowing for the admission of his self-serving exculpatory statements as result of the portion of the statements that were presented by the State.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION