**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0583-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAMONT TAYLOR, a/k/a
LAMONT TAYLOR, JR.,
KEITH BENSON, KENYA
TAYLOR, LOMONT TAYLOR,
and MICHAEL JOHNSON,

    Defendant-Appellant.

_____

Submitted September 12, 2022 – Decided October 11, 2022

Before Judges Currier, Mayer and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 18-09-0532 and 18-10-0621.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael A. Priarone, Designated Counsel, on the brief).

William C. Daniel, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from judgments of conviction dated October 3, 2019. Two different juries convicted him on drug and related charges under two separate indictments. He also appeals from the sentences imposed. We affirm.

I.

We recite the facts based on the testimony adduced during the evidentiary hearings on defendant's motions to suppress drug evidence and the jury trials.

Indictment 18-10-0621

On June 7, 2018, around 1:15 in the morning, Linden Police Department Officers Robert Smith and David Aracque were patrolling on a local roadway when they noticed a silver car swerving from one side of the road to the other. Because they were concerned the driver was impaired, the officers stopped the car. The stop occurred within 500 feet of a public park.

There were two individuals in the car. Defendant sat in the driver's seat and co-defendant, Jennifer Serio, sat in the front passenger seat. After stopping the car, Smith approached defendant and Aracque approached Serio. Officer

Smith smelled no alcohol and saw no indicia of defendant being drunk. Nonetheless, Smith asked defendant to exit the car so Aracque, who was better trained in driving-under-the-influence matters, could observe defendant.

When defendant got out of the car, Smith noticed what appeared to be a fold of heroin on the driver's side floorboard. Smith brought defendant to where Aracque was standing. He then returned to the driver's side of the car and saw the fold again. Aracque also looked into the car's interior and confirmed seeing a fold on the floorboard.

The officers then searched defendant's person. While being searched, defendant spoke to Serio, alerting her to the officers' discovery of the fold on the floor of the car. Serio picked up the fold and swallowed it.

The officers found no drugs on defendant. However, during a search of the car, the officers found 149 folds of heroin and approximately $2,000 in cash. The officers arrested defendant and Serio. A judge released defendant pending trial subject to pretrial conditions imposed by the court.

On October 23, 2018, a Union County grand jury indicted defendant and Serio on the following counts: (1) third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1); (2) third-degree possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5(b)(3);

A-0583-19

(3) second-degree possession of a controlled dangerous substance with intent to distribute on or within 500 feet of a public park, N.J.S.A. 2C:35-7.1(a); (4) fourth-degree obstruction against defendant only, N.J.S.A. 2C:29-1(a); and (5) fourth-degree tampering against Serio only, N.J.S.A. 2C:28-6(1).

Indictment 18-09-0532

On June 28, 2018, defendant was arrested on drug charges. Around 4:30 in the afternoon, Linden Police Department Detectives Michael Olbrys and Jason Mohr were conducting surveillance in an area known for drug transactions when they saw a silver car. The car was occupied by two men - defendant, who sat in the driver's seat, and Rajohn Posey, who sat in the front passenger seat. When the car stopped, Posey got out and started talking to a group of people on the sidewalk. A female got into the car, sat in the front passenger seat, and handed cash to defendant. The officers, using binoculars, saw defendant give the woman a small item in return for the cash.

After receiving the small item, the woman got out of the car and darted away. Posey returned to the car and defendant drove off. The detectives followed and stopped the car a few minutes later.

Detective Mohr asked for defendant's driving credentials. While speaking with defendant, Mohr saw two pink capsules on the driver's side door handle.

A-0583-19

Mohr asked defendant to get out of the car and then searched him. During the search, the officer found seven folds of suspected heroin in defendant's pants pocket. The officers then searched the car and discovered $506, suspected heroin folds stamped with "Rihanna" and "444," a clear bag containing a rock-like substance, and a digital scale. Defendant and Posey were arrested. At police headquarters, another officer searched defendant again and found four more folds of suspected heroin in defendant's shoes.

Testing of the material confirmed the folds found in defendant's car contained heroin, the folds found in defendant's shoes contained a mixture of heroin, cocaine, and fentanyl, the clear bag contained cocaine, and the two pink pills contained n-ethylpentylone, a designer drug of the phenethylamine class, more commonly known as bath salts.[1]

A Union County grand jury indicted defendant and Posey on three counts: (1) third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1); (2) third-degree possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5(b)(3); and (3) third-degree possession of a controlled dangerous substance with intent to distribute on or within 1,000 feet of school property, N.J.S.A. 2C:35-7(a).

---

[1] See DRUG ENFORCEMENT ADMINISTRATION, N-ethylpentylone (2019).

Motions to Suppress

On November 27, 2018, defendant moved to suppress the drug evidence in both cases. Following an evidentiary hearing, in two separate April 4, 2019 written decisions, the judge denied the motions. The judge found the testifying detectives credible in both matters and accorded significant weight to their testimony.

In Indictment No. 18-09-0532, the judge found the detectives had reasonable suspicion to justify the stop of defendant's car after Detective Olbrys saw a hand-to-hand transaction between defendant and a woman he knew to be a drug user from her prior involvement with the Linden Police Department. Based on his training and experience with drug transactions, the judge found it reasonable for Detective Olbrys to conclude a drug transaction occurred when he saw defendant exchange a small item in return for the woman offering cash. Additionally, the judge reasoned the officer's observations of the events, including seeing two pink pills in the handle of the driver's side door, supported sufficient probable cause to arrest defendant for suspected drugs and search defendant's person and the car for additional drug evidence.

In Indictment No. 18-10-0621, the judge similarly found the officers had reasonable suspicion to justify the stop of defendant's car after seeing his car

6

"swerving, left to right, in and out of the left lane in which it was travelling." Believing defendant might be intoxicated, Officer Smith testified he asked if defendant was okay to drive because the car was "swerving, . . . riding on the line . . . not staying in between the lines." Defendant then made a gesture to Officer Smith, suggesting he was engaged in sexual activity with Serio, to explain why it may have appeared he was driving erratically. The judge found Smith's seeing defendant's car swerve left and right over the traffic lines provided reasonable and articulable suspicion that defendant violated N.J.S.A. 39:4-88, warranting the motor vehicle stop. Additionally, the audio from Officer Smith's body camera corroborated the officer's erratic driving observation, and therefore the judge held the officer's testimony about defendant's driving was not an afterthought invented to justify the stop.

Because the judge concluded there was a sufficient basis for the motor vehicle stop, the judge upheld the search of both defendant's person and the car. Further, the judge found Officer Smith saw a fold in plain view when defendant stepped out of the car. He also held the search of defendant's car was justified under the automobile exception to the search warrant requirement under State v. Witt, 223 N.J. 409 (2015).

A-0583-19

Pledge Issued by the Judge Prior to the Trials

Prior to both trials, the judge requested the jurors sign a pledge stating the following:

> I agree to follow all of the [c]ourt's preliminary instructions, including the [c]ourt's specific instructions relating to Internet use and communications with others about the case. I agree that during the duration of this trial, I will not conduct any research into any of the issues or parties involved in this trial. Specifically, I will not use the Internet to conduct any research into any of the issues or parties involved in this trial. I will not communicate with anyone about the issues or parties in this trial, and I will not permit anyone to communicate with me, including via social media, concerning my jury service. I further agree that I will report any violations of the [c]ourt's instructions immediately.
>
> Signed under penalty of perjury.

Defendant did not object to the pledge before the start of either trial.

On July 11, 2019, the jury convicted defendant on all charges under Indictment No. 18-09-0532.

Under Indictment No. 18-10-0621, Serio entered into a negotiated plea and testified against defendant. On July 26, 2019, the jury convicted defendant on all charges under this indictment.

8

<u>Sentencing</u>

On September 20, 2019, after weighing the mitigating and aggravating factors, the judge sentenced defendant on both indictments.

On Indictment No. 18-10-0621, the judge merged counts one and two with count three, and sentenced defendant to an extended term of twelve years imprisonment with six years of parole ineligibility. The judge imposed a concurrent eighteen months of imprisonment on count four.

On Indictment No. 18-09-0532, the judge merged counts one and two with count three, and sentenced defendant to five years of imprisonment with three years of parole ineligibility. The judge ordered the sentence run consecutively to the sentence under Indictment No. 18-10-0621.

II.

In his counselled brief, defendant raises the following arguments:

<u>POINT I</u>

> DEFENDANT WAS DENIED A FAIR TRIAL AND HIS RIGHT TO A JURY TRIAL BY THE TRIAL COURT'S REQUIRING THAT DEFENDANT'S JURORS IN BOTH TRIALS SIGN A PLEDGE "UNDER PENALTY OF PERJURY" TO FOLLOW THE TRIAL JUDGE'S INSTRUCTIONS (NOT RAISED BELOW).

9

POINT II

THE TRIAL COURT ERRED IN DENYING
DEFENDANT'S MOTIONS TO SUPPRESS IN BOTH
OF HIS CASES AND THE RESULTANT
CONVICTIONS MUST BE VACATED.

POINT III

DEFENDANT WAS DENIED FAIR TRIALS BY THE
ERRONEOUS ADMISSION OF PREJUDICIAL
EXPERT TESTIMONY IN BOTH OF HIS CASES
(PARTIALLY RAISED BELOW).

POINT IV

DEFENDANT'S CONVICTION IN INDICTMENT
18-10-0621 FOR SECOND[-]DEGREE POSSESSION
OF CDS WITHIN 500 FEET OF CERTAIN PUBLIC
PROPERTY MUST BE VACATED AS THERE WAS
NO EVIDENCE OF ANY NEXUS BETWEEN
DEFENDANT'S POSSESSION OF THE [CDS] AND
THE PUBLIC PROPERTY OTHER THAN THAT
WAS THE LOCATION THE POLICE CHOSE TO
CONDUCT THEIR MOTOR VEHICLE STOP OF
DEFENDANT (NOT RAISED BELOW).

POINT V

THE TRIAL COURT'S IMPOSITION OF A PAROLE
DISQUALIFIER CONSECUTIVE TO AN
EXTENDED TERM WAS EXCESSIVE AND
REQUIRES THAT DEFENDANT'S SENTENCE BE
VACATED AND THE MATTER REMANDED FOR
RE-SENTENCE.

In his pro se brief, defendant asserts the following:

THE POLICE DID NOT HAVE ANY VALID REASON TO STOP OR SEARCH [DEFENDANT'S] VEHICLE.

A.

We first address defendant's contention that the pledge signed by jurors at the start of trial deprived him of the right to a fair trial. While we reject defendant's argument on this point, we disapprove of the use of "juror pledges," which restate "under penalty of perjury" a juror's acknowledgment they will follow the trial judge's instruction. Our Model Jury Charges given before the start of every trial, after the jury is sworn but before opening statements, provide specific instructions to the jurors. See Model Jury Charges, 1.10A "Instructions To Jurors Before Voir Dire" (rev. Sept. 2022). The Model Jury Charges direct jurors to follow a judge's instruction at all times, including when jurors are inside and outside the courthouse, and even when the jurors return home or recess for lunch. See Model Jury Charges, 1.11B "Prohibition Against Discussing the Case" (rev. May 2007). Similarly, the Model Jury Charges direct jurors not to discuss the case prior to deliberations and not to discuss the case with anyone outside the jury. Ibid. Jurors are told that if anyone attempts to discuss the case with them or influence their judgment about the case, the juror is to report that to the judge immediately. Ibid. The Model Jury Charges also

11

instruct jurors to refrain from conducting any outside research, including use of the internet or social media platforms. See Model Jury Charges, 11.C "Jurors Not to Visit Accident Scene or Do Investigations, or Conduct Any Independent Research of Any Nature, Including Use of the Internet or Other Electronic Media" (rev. June 2018). Given the instructions issued to every juror prior to the start of a trial, we deem it redundant to issue a pledge that restates the preliminary instructions to jurors under the Model Jury Charges.

In addressing the merits of defendant's argument, defendant never challenged the judge's use of a juror pledge as part of the judge's jury instructions until this appeal. Where a defendant first challenges a jury instruction on appeal, we review the matter for plain error. State v. Singleton, 211 N.J. 157, 182 (2012).

Plain error is an error "clearly capable of producing an unjust result." R. 2:10-2; Singleton, 211 N.J. at 182. A belated claim of error regarding a jury instruction requires a defendant demonstrate a legal impropriety in the charge which prejudicially affected the defendant's rights and was sufficiently grievous to convince us the error possessed a clear capacity to bring about an unjust result. Id. at 182-83.

Consistent with well-settled case law and the Model Jury Charges, jurors are to follow a trial judge's instructions. See State v. Loftin, 146 N.J. 295, 390 (1996) ("That the jury will follow the instructions given is presumed."). Here, the pledge simply reiterated the preliminary instructions embodied in the Model Jury Charges, namely, jurors were required to follow the law, not conduct any research, not discuss the case among themselves prior to deliberation, and report any violations of the duties of the jury to the court.

While the use of a written pledge is not part of an approved jury instruction, any error in the judge's use of the written pledge was harmless because the pledge reiterated and incorporated the instructions approved in the Model Jury Charges. Therefore, we discern no harm or unfairness to defendant in the use of the jury pledge and he is not entitled to a reversal on this point.

B.

We next address defendant's assertion that the judge erred in denying his motions to suppress evidence. We disagree.

In reviewing a motion to suppress, we defer to the factual findings of the trial judge and will uphold those findings if "supported by sufficient credible evidence in the record." State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). Factual findings are overturned only

13

if so clearly mistaken that the interests of justice demand intervention. Id. at 426 (citing State v. Elders, 192 N.J. 224, 244 (2007)). We owe no deference to the trial court's conclusions of law, which we review de novo. Ibid. (citing State v. Watts, 223 N.J. 503, 516 (2015)).

The judge set forth his factual findings in support of denial of the motions to suppress after conducting an evidentiary hearing. In both matters, the judge found the officers' testimony credible. The judge's factual findings based on his credibility determinations are entitled to deference. State v. Hubbard, 222 N.J. 249, 269 (2015).

Under Indictment No. 18-10-0621, the officers were permitted to stop defendant provided they had reasonable suspicion of unlawful activity. N.J. Const. art. I, ¶ 7; U.S. Const. amend. IV; State v. Mai, 202 N.J. 12, 22-23 (2010). Here, there was reasonable and articulable suspicion to stop defendant's car based on Officer Smith observing the car drift from one side of the lane to the other, constituting a motor vehicle violation. The fact that the motor vehicle recording in the police car did not capture the movements of defendant's car is not dispositive because the officer saw the car veer in the traffic lane and explained the motor vehicle camera only activates thirty seconds before a stop.

A-0583-19

According to Smith, defendant's car swerved several times prior to his motor vehicle camera automatically activating.

Officer Smith also believed defendant may have been driving while under the influence. The contemporaneous audio from the officer's body camera supported Smith's concern that defendant may have been intoxicated. In response to the officer asking if he was "okay to drive," defendant admitted to a motor vehicle violation by explaining the car was weaving because defendant was engaged in sexual conduct with his female passenger. Thus, we discern no basis for overturning the judge's fact findings, based on the officer's credible testimony, supporting a reasonable and articulable suspicion that defendant may have been driving while under the influence and violating a motor vehicle law.

In his pro se brief concerning Indictment No. 18-10-0621, defendant argues both the stop and the subsequent search of his car were illegal. In New Jersey, once an officer legally stops a vehicle, the officer may require the driver to step out of the vehicle without any further justification. State v. Bernokeits, 423 N.J. Super. 365, 370-71 (App. Div. 2011) (citing State v. Smith, 134 N.J. 599, 611 (1994)). After stopping the car and asking defendant to get out, both officers saw of a fold of suspected heroin in plain view on the floorboard of the car. Because the officers saw the fold in plain view, no search warrant was

15

required to search the car. State v. Harris, 211 N.J. 566, 581 (2012) (holding an exception to the search warrant requirement where an officer sees contraband in plain view).

Additionally, officers may lawfully search a car at the scene of a motor vehicle stop absent a warrant if probable cause for the search arose from unforeseeable and spontaneous circumstances. Witt, 223 N.J. at 447-49. In State v. Rodriguez, 459 N.J. Super. 12, 23 (App. Div. 2019), we held that Witt affords police officers under such circumstances "the discretion to choose between searching the vehicle immediately if they spontaneously have probable cause to do so, or to have the vehicle removed and impounded and seek a search warrant later." Here, the circumstances were unforeseeable and spontaneous, justifying a search of the car based on the automobile exception to the search warrant under Witt.

Therefore, contrary to defendant's pro se argument, the search of the car was lawful under the circumstances and the judge correctly denied defendant's motion to suppress the drug evidence.

Regarding Indictment No. 18-09-0532, again the judge found the officers' testimony credible. The officers, using binoculars, observed a suspected hand-to-hand drug transaction. See State v. Moore, 181 N.J. 40, 46-47 (2004) (noting

probable cause to arrest existed where: 1) the officer conducting surveillance "was an experienced narcotics officer;" 2) he had previously made arrests in a neighborhood known for drug trafficking; and 3) "[u]sing binoculars, [the officer] observed three men move away from the group to the back of a vacant lot, and he saw defendant and his companion give money to a third person in exchange for small unknown objects").

Here, the officers were familiar with the neighborhood, knew the female who gave money to defendant was a known drug user based on prior police interactions, and saw an exchange of money in return for a small object. Based on the suspected drug transaction, the officers had sufficient probable cause to stop defendant's car.

Because we defer to the judge's credibility determinations and factual findings, we discern no error in the judge's denial of the motions to suppress evidence.

## C.

Defendant next claims the trial judge erred by admitting prejudicial and improper expert testimony related to narcotics. Because defendant only partially objected to certain narcotics testimony proffered by the State's witnesses, we

review the matter for plain error. R. 2:10-2. After reviewing the experts' testimony, we reject defendant's argument.

A trial court's evidentiary rulings "are entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Singh, 245 N.J. 1, 12-13 (2021) (quoting State v. Nantambu, 221 N.J. 390, 402 (2015)). Applying this standard, we do not substitute our judgment "for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted." Id. at 13 (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

N.J.R.E. 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." To be admissible, the proposed expert testimony must satisfy three criteria: (1) concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be state of the art such that an expert's testimony is sufficiently reliable; and (3) the witness must have appropriate expertise to offer the intended testimony. Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 504 (App. Div. 2017).

In the context of narcotics testimony, an expert may opine on

> the manner of packaging and processing for use or distribution, the significance of various quantities and concentrations of narcotics, the roles of various drug paraphernalia, characteristics of the drugs themselves, the import of circumstances surrounding possession, the conduct of the possessor and the manner in which drugs may be secreted or otherwise possessed for personal use or [distribution].
>
> [State v. Reeds, 197 N.J. 280, 292 (2009) (quoting State v. Odom, 116 N.J. 65, 81-82 (1989)).]

In drug cases, an expert is permitted to testify in the absence of hypothetical questions. See State v. Cain, 224 N.J. 410, 429 (2016) (allowing an expert to explain the purpose of logos on drug packaging without being asked a hypothetical question). In Cain, the Court held "hypothetical questions should be used only when necessary in drug cases." Ibid.

Here, the State was not required to asked either narcotics expert hypothetical questions. The evidence was straightforward and the essential facts were not in dispute. The experts' narcotics testimony fell within the permissible parameters identified in Reeds. Additionally, neither testifying expert opined on defendant's state of mind which would have been impermissible. See Cain, 224 N.J. at 429.

19

Further, the testimony proffered by the State's drug experts comported with the requirements of Rule 702. The testifying witnesses had expertise in the field of narcotics, were qualified by the judge to offer such testimony to the jury, and provided information about drug packaging, processing, and distributing, which information was beyond the ken of the average juror.

On the gang comment made during the testimony of Officer Veltre, the judge issued a curative instruction to jury immediately after the comment. The judge told the jurors that defendant was not involved in any gang-related activity and to disregard the officer's statement about gangs. The judge provided this instruction absent an objection or request for a curative instruction by defense counsel. Under the circumstances, defendant did not suffer any prejudice resulting from the one-time gang reference during Officer Veltre's testimony.

Here, the State's evidence against defendant was overwhelming. Based on the strength of the evidence, we are satisfied that even if the judge erred in admitting certain expert testimony, the testimony was harmless. State v. Trinidad, 241 N.J. 425, 450-52 (2020) (finding references to publicized instances of police brutality during the trial of a police officer accused of misconduct were harmless because the evidence against the defendant was

overwhelming). Under the circumstances, the testimony of the State's narcotics experts resulted in no reversible prejudice to defendant.

D.

Defendant next argues there was insufficient evidence in the record to support his conviction for possession of controlled dangerous substances within 500 feet of public property under N.J.S.A. 2C:35-7.1(a). Defendant asserts he never intended to distribute drugs near a public park and the officers deliberately stopped his car adjacent to the park. Because defendant failed to raise this argument to the trial judge, we review for plain error. R. 2:10-2. Having reviewed the record, we disagree with defendant's assertion on this point.

In determining whether the State's evidence established the elements of an offense, we apply the same standard as the trial court. State v. Cruz-Pena, 459 N.J. Super. 513, 520-21 (App. Div. 2019), rev'd on other grounds, 243 N.J. 342 (2020). We "determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Ibid. We "must consider only the existence of such evidence, not its worth, nature, or extent." Ibid. (internal quotation marks omitted).

N.J.S.A. 2C:35-7.1 does not require a defendant intended to distribute drugs near a public park to support a conviction.  In State v. Gregory, our Supreme Court explained that under N.J.S.A. 2C:35-7, an analogous statute prohibiting distribution of drugs near a school, a defendant's intended place of distribution is irrelevant.  220 N.J. 413, 421 n.2 (2015) (citing State v. Ivory, 124 N.J. 582, 592 (1991)).  As long as the defendant had an intent to distribute while within the restricted zone, the statute is satisfied even if the defendant did not plan to distribute within the zone of a prohibited area.  Ibid.

Here, defendant does not dispute he possessed drugs when the police stopped his car.  Nor does defendant contend the location where his car was stopped was beyond 500 feet of the public park.  On this record, we are satisfied there is no basis to reverse defendant's conviction because the State presented evidence sufficient to satisfy the requirements under N.J.S.A. 2C:35-7.1.

E.

We also reject defendant's argument that the judge erred in imposing parole disqualifiers consecutive to the imposition of an extended term, resulting in an excessive sentence and requiring a remand for resentencing.

We review sentencing decisions under a deferential standard.  State v. Fuentes, 217 N.J. 57, 70 (2014).  We may not substitute our judgment for that

of the sentencing court.  State v. Cuff, 239 N.J. 321, 347 (2019).  We will affirm a sentence unless: (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."  State v. Roth, 95 N.J. 334, 364-65 (1984).

A sentencing court is required to "state reasons for imposing such sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence."  R. 3:21-4(g); Fuentes, 217 N.J. at 73; see also N.J.S.A. 2C:43–2(e) (requiring sentencing courts provide a statement of "factual basis supporting its findings of particular aggravating or mitigating factors affecting sentence.").

Defendant claims entitlement to resentencing based on the following: (1) the judge "arguably" sentenced him to two extended terms because the parole disqualifier in Indictment No. 18-09-0532 is so severe it constitutes a separate extended term; (2) the judge failed to consider N.J.S.A. 2C:35-7(b)(1), which would have enabled the judge to forego imposition of a parole disqualifier; and (3) the judge should not have imposed a consecutive sentence because

defendant's crimes were non-violent and victimless and were so close in time that they amount to "a single period of aberrant behavior." We reject these arguments.

1.

Defendant asserts the imposition of a parole disqualifier under Indictment 18-09-0532, in addition to the imposition of an extended term under Indictment 18-10-0621 with a parole disqualifier, amounted to the imposition of more than one extended term. We disagree.

Defendant cites no law in support of this argument. Moreover, defendant fails to point to the violation of any sentencing guidelines in the imposition of the sentences in the two indictments. The judge did not exceed the penalties imposed by statute for the offenses and the sentences imposed were in accordance with statutory law. State v. Murray, 162 N.J. 240, 246-47 (2000). Additionally, there is nothing about the judge's application of the sentencing guidelines in these cases that "shock[s] the judicial conscience." Roth, 95 N.J. at 364-65.

Here, the judge expressly stated that sentencing defendant to two extended terms would "lead to an inequitable outcome under [N.J.S.A.] 2C:1-2. Frankly, I think it would be a manifest injustice." The judge only sentenced defendant to

24

one extended term under Indictment 18-10-0621. Significantly, defendant never argued he was ineligible for an extended term under N.J.S.A. 2C:44-3(a). Under these circumstances, we reject defendant's claim he received an extra extended term and decline to disturb the sentences imposed on that basis.

2.

N.J.S.A. 2C:35-7(b) authorizes the sentencing court to "waive or reduce the minimum term of parole ineligibility" for convictions under N.J.S.A. 2C:35-7(a) if the court deems such a waiver to be appropriate upon consideration of the following factors:

> (a) the extent of the defendant's prior criminal record and the seriousness of the offenses for which the defendant has been convicted;
>
> (b) the specific location of the present offense in relation to the school property, including distance from the school and the reasonable likelihood of exposing children to drug-related activities at that location;
>
> (c) whether school was in session at the time of the offense; and
>
> (d) whether children were present at or in the immediate vicinity of the location when the offense took place.
>
> [N.J.S.A. 2C:35-7(b)(1).]

After considering the factors under N.J.S.A. 2C:35-7(b), the judge found defendant failed to present evidence in support of a waiver. Defendant had an

A-0583-19

extensive criminal history involving drugs, weapons, and other first and second-degree offenses. Also, the offense occurred near a school, although not while children were present.

3.

Where a defendant commits an offense while released pending the disposition of a previous offense, N.J.S.A. 2C:44-5(h) requires courts impose a consecutive sentence unless, "in consideration of the character and conditions of the defendant," such a sentence "would be a serious injustice which overrides the need to deter such conduct by others."

Here, two weeks after his arrest for possession with intent to distribute near a public park, defendant engaged in a drug transaction near a school. We discern nothing concerning defendant's character or condition to warrant imposition of a concurrent sentence in this instance.

Additionally, the judge considered the factors under State v. Yarbough, 100 N.J. 627, 646-47 (1985), and found there were two distinct crimes occurring at two distinct locations with two distinct individuals. Thus, the judge concluded the crimes were distinct and independent of each other to warrant imposition of consecutive sentences. Further, the judge held consecutive sentences were required to deter similar conduct by others.

A-0583-19

Based on this record, we are satisfied the judge more than adequately supported his reasons for imposing consecutive sentences consistent with N.J.S.A. 2C:44-5(h) and <u>Yarbough</u>.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0583-19